UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 02 2015

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

LUCY M. OKOLI

PLAINTIFF

VS.     NO. *4:15cv611-SWW*

This case assigned to District Judge *Wright*
and to Magistrate Judge *Deere*

ASBURY AUTOMOTIVE ARKANSAS, L.L.C.;
PRESTIGE TOY, L.L.C.;
TOYOTA MOTOR CREDIT CORPORATION; and
JOHN DOES 1–100

DEFENDANTS

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446, defendants Asbury

Automotive Arkansas, L.L.C. ("Asbury"), Prestige Toy, L.L.C. ("North Point

Toyota"), and Toyota Motor Credit Corporation ("Toyota Credit") hereby remove this

action from the Circuit Court of Pulaski County, Arkansas, to the United States

District Court for the Eastern District of Arkansas because a federal question

appears on the face of the initial pleading filed by plaintiff Lucy M. Okoli ("Okoli")

and more particularly state the following:

1.     Okoli filed her complaint in the Circuit Court of Pulaski County,

Arkansas, on September 1, 2015.  Her claims arise from her attempted purchase of

a used 2011 Toyota Camry at North Point Toyota.  She alleges that North Point

Toyota wrongfully "tried to back out" of a sales agreement.  In accordance with 28

U.S.C. § 1446(a), a copy of all process, pleadings, and other papers received by

defendants are attached to this notice as Exhibit A.

2.     Based upon her allegation that North Point Toyota wrongfully "tried to back out" of the sales agreement, Okoli asserts the following four claims: for alleged violations of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 *et seq.* ("ADTPA"); for breach of contract; for alleged violations of the federal Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* ("ECOA"); and for alleged violations of the federal Truth in Lending Act, 15 U.S.C. 1601 *et seq.* ("TILA").

3.     This lawsuit is a civil action within the meaning of the Acts of Congress relating to removal of actions to federal court.

4.     Each of the defendants received a copy of Okoli's complaint and summons by certified mail on their registered agents for service of process on September 3, 2015.

5.     The removal of this action to this Court is timely under 28 U.S.C. § 1446(b) because this notice of removal has been filed within 30 days of September 3, 2015, which is the date on which defendants first received the summons and complaint in this action.

6.     This Court is the proper venue for this action under 28 U.S.C. § 1441(a) because it is the federal district court that embraces the place where the original action was filed.

7.     Okoli asserts claims under ECOA and TILA, two enactments of federal law. (*See* Compl. at ¶¶ 54–67). Federal question jurisdiction therefore exists under 28 U.S.C. § 1331 because the resolution of Okoli's claims will require adjudication of disputed questions of federal law.

8.     The Court has supplemental jurisdiction over Okoli's state law ADTPA and breach of contract claims under 28 U.S.C. § 1367 because those claims arise out of the same operative facts as her claims under ECOA and TILA and therefore "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. 1367(a).

9.     Because Okoli's ECOA and TILA claims arise under the laws of the United States, removal of this entire action is appropriate under 28 U.S.C. § 1441(a)–(c).

10.     All the defendants named in this action join in this notice of removal. All properly joined and served defendants therefore join in or consent to the removal of this action to federal court as required by 28 U.S.C. § 1446(b)(2).

11.     In accordance with 28 U.S.C. § 1446(d), defendants will file a file-marked copy of this notice of removal with the Circuit Clerk of Pulaski County, Arkansas, and will serve notice of the removal in writing on counsel for plaintiff.

WHEREFORE, defendants Prestige Toy, L.L.C., Asbury Automotive Arkansas L.L.C., and Toyota Motor Credit Corporation hereby remove this action from the Circuit Court of Pulaski County, Arkansas, to the United States District Court for the Eastern District of Arkansas, Western Division, and seek resolution by this Court of all issues raised herein.

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
Fax: (501) 376-9442
ryoung@wlj.com; gmarts@wlj.com


By: _____
    Regina A. Young (96161)
    Gary D. Marts, Jr. (2004116)

*Attorneys for Defendants*


## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2015, I served a copy of the foregoing on

the following via United States Mail:

    William T. Crowder
    Corey D. McGaha
    Crowder McGaha, LLP
    5507 Ranch Drive, Suite 202
    Little Rock, Arkansas 72223

    Cecille Doan
    Center for Arkansas Legal Services
    1300 West 6th Street
    Little Rock, Arkansas 72201


_____
Gary D. Marts, Jr.

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2015-Sep-01 12:13:00
60CV-15-4106
C06D12 : 13 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
### _____DIVISION

LUCY M. OKOLI                                                 **PLAINTIFF**

v.                             Case No. _____

**ASBURY AUTOMOTIVE
ARKANSAS L.L.C.,
PRESTIGE TOY, L.L.C.,
TOYOTA MOTOR CREDIT
CORPATION and John Does
1-100**                                      **DEFENDANTS**

---

### COMPLAINT

---

Comes now the Plaintiff Lucy M. Okoli, by and through her attorneys CROWDER MCGAHA, LLP and CENTER FOR ARKANSAS LEGAL SERVICES, and for her Complaint against Defendants Asbury Automotive Arkansas L.L.C., Prestige Toy, L.L.C., and Toyota Motor Credit Corporation, states:

### INTRODUCTION

1. On July 11, 2015, Plaintiff Lucy M. Okoli ("Plaintiff" or "Ms. Okoli") purchased a used 2011 Toyota Camry from North Point Toyota, in North Little Rock. She finalized the deal on that day, but later North Point tried to back out. The only contract that North Point and Ms. Okoli signed gave North Point no option to back out of the agreement.

2. North Point lacked the authority to back out of its contract with Ms. Okoli. Instead, it resorted to threats and intimidations, and, at one point, threatened to call the police or repossess her car if Ms. Okoli did not sign a different contract with a significantly higher interest rate and monthly payment.



3.      The Arkansas Deceptive Trade Practices Act protects Arkansas consumers against these misleading and deceptive practices. And federal statutory and Arkansas contract law protects the integrity of executed agreements. North Point has flouted both of these principles of law, by engaging in an illegal "yo-yo delivery" scheme.

## PARTIES JURISDICTION AND VENUE

4.      Plaintiff Lucy M. Okoli ("Plaintiff" or "Ms. Okoli") is an adult resident of Little Rock, Pulaski County, Arkansas.

5.      Defendant Asbury Automotive Arkansas L.L.C., is a foreign limited liability company, and can be served through its registered agent Corporation Service Company, 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, AR 72201.

6.      Defendant Prestige Toy, L.L.C., is a foreign limited liability company, doing business under the fictitious name "Prestige Toyota," and can be served through its registered agent Corporation Service Company, 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, AR 72201.

7.      Defendant Toyota Motor Credit Corporation, is a foreign corporation, and can be served through its registered agent The Corporation Company, 124 West Capitol Ave, Suite 1900, Little Rock, AR 72201.

8.      John Does 1-100 are persons/entities whose identity is unknown to Plaintiff and Plaintiff's attorney who may have liability for the causes of action. An affidavit of same from Plaintiff's attorney is attached hereto as Exhibit A and incorporated by reference under Ark. Code Ann. § 16-56-125(c).

9.      Venue is proper here, because each of the causes of action alleged accrued in Pulaski County, Arkansas, and because the Defendants conduct substantial business in this

county. Defendants' primary place of business is at 4336 Landers Rd, North Little Rock, AR 72117.

10.     This Court has subject matter jurisdiction over this Action under Ark. Const. Amend. 80 §6(A) which makes the trial court "the original jurisdiction of all justiciable matters not otherwise assigned pursuant to the Arkansas Constitution." This Court has jurisdiction over Plaintiff's Equal Credit Opportunity Act (ECOA) claims under 15 U.S.C. § 1691e(f) which provides an action may be brought "in any . . .court of competent jurisdiction." This Court has jurisdiction over Plaintiff's Truth in Lending Act (TILA) claims under 15 U.S.C. § 1640(e) which provides an action may be brought "in any . . . court of competent jurisdiction.

11.     This Court has personal jurisdiction over Defendants under to Ark. Code Ann. § 16-4-101(B) and the due process clause of the Fourteenth Amendment to the United States Constitution.

## FACTUAL ALLEGATIONS

**A.      Ms. Okoli goes to North Point Toyota to Purchase a Used Vehicle with a Monthly Payment under $200.**

12.     Ms. Okoli was born in Nigeria and moved to the United States on September 1, 2012 to be married. She holds a valid Social Security Card, issued on March 22, 2013. The Card had a stamp that says "Valid for Work Only with DHS Authorization."

13.     Ms. Okoli owns and drives a 2004 Hyundai Santa Fe.

14.     In July 2015, Ms. Okoli was interested in purchasing a new vehicle. In the past, she had received marketing emails from Edward Kirk, a former employee of North Point Toyota.

15.     On July 9, 2015, Ms. Okoli had a telephone conversation with Mr. Kirk where he asked Ms. Okoli if she liked the cars she had seen in the emails. Ms. Okoli told Mr. Kirk she was

interested in purchasing a used car with a monthly payment of under $200. Mr. Kirk told Ms. Okoli to come into the dealership at 4336 Landers Rd, North Little Rock, AR 72117.

16.     On Saturday morning, July 11, 2015, Ms. Okoli went to the North Point Toyota dealership and met with Mr. Kirk.

17.     Ms. Okoli again stressed her desire to purchase a used car with a monthly payment of under $200. The dealership took custody of Ms. Okoli's 2004 Hyundai Santa Fe. After test-driving several used cars, Ms. Okoli decided she liked a 2012 Toyota Camry.

18.     Mr. Kirk told Mr. Okoli that the price was $15,999 for the 2012 Toyota Camry, and her monthly payment would be $245. Mr. Kirk also told Ms. Okoli they could pay $2,000 for her 2004 Hyundai Santa Fe, which would reduce her monthly payment to $215.

19.     Because this was above a monthly payment of under $200, she left the dealership. Mr. Kirk stopped Ms. Okoli from leaving by telling her he had come back from the sales room, and they had found a 2011 Toyota Camry at North Point Nissan, and her monthly payment would be under $200 for this vehicle.

20.     Ms. Okoli drove with Mr. Kirk to North Point Nissan in the 2012 Toyota Camry and swapped it out for the 2011 Camry. They then returned to the North Point Toyota Dealership.

21.     After arriving back at the North Point Toyota Dealership, Ms. Okoli and Mr. Kirk went to the sales office. There, Mr. Kirk told Ms. Okoli she could get the 2011 Camry for $188 per month.

22.     Before going to the North Point Toyota finance office and signing any documents, North Point Toyota's agents represented to Ms. Okoli she would be approved for financing the balance of the $12,332.40 upon her payment of $2,000 for the trade in of her Hyundai Santa Fe,

and North Point would transfer lawful title and registration. North Point Toyota's agents told Ms. Okoli they would mail her the title to the vehicle.

23.     North Point Toyota concealed from Ms. Okoli that they were not treating the financing agreement as final and that they would not honor their financing promises.

**B.     Ms. Okoli goes to the North Point Toyota finance office and signs a Retail Installment Sales Agreement.**

24.     Ms. Okoli then went into the North Point Toyota finance office, where she met with Ms. Ozge Holland, North Point Toyota's finance manager. Ms. Holland gave Ms. Okoli several documents to sign and told her there was no need she read them. Ms. Holland explained that the documents were selling Ms. Okoli her car, and dealing with replacement car keys. These Documents included a "Retail Purchase Agreement." *See* Exhibit No. 1. Ms. Okoli was given a copy of the Retail Purchase Agreement, but the dealership representative did not sign it. On July 11, 2015, North Point Toyota and Toyota Motor Credit also accessed Ms. Okoli's credit information from TransUnion.

25.     Ms. Holland then presented Ms. Okoli with a "Retail Installment Sales Contract." *See* Exhibit No. 2. The Retail Installment Sales Contract was signed by Prestige Toyota, L.L.C., and Lucy Okoli. At this point, this sale was "consummated" for the TILA. Ms. Okoli was given a copy of the Retail Installment Sales Contract and the Retail Purchase Agreement. After Ms. Okoli retained legal counsel, counsel for Asbury Auto Group forwarded an "Agreement for Delivery Prior to Sale." *See* Exhibit No. 3. Ms. Okoli does not recall signing this document, and it does not appear to be Ms. Okoli's signature on this document. Ms. Okoli was not given a copy of this document when she left the dealership.

26.     The Retail Installement Sales Contract defined the "Creditor" as Prestige Toyota, L.L.C., provides Ms. Okoli is "individually liable" to Prestige Toyota for all payments due, and

had a monthly payment schedule of $188.94 beginning on August 10, 2015. The Retail

Installment Sales Contract listed the amount financed as $12,332.40 and included the sales tax

for the vehicle. The Retail Installment Sales Contract contains no provision making the sale

contingent on approval for finance or that the TILA disclosures were estimated. The Retail

Installment Sales Contract Contained the following TILA disclosures:

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ 2,000.00 is |
|---|---|---|---|---|
| 4.50 % | $ 1,838.10 | $ 12,332.40 | $ 14,170.50 | $ 16,170.50 |

Your Payment Schedule Will Be:

| Number of Payments: | Amount of Each Payment: | When Payments Are Due: |
|---|---|---|
| One Deferred Downpayment of | $ N/A | N/A |
| 75 Regular Payments of | $ 188.94 | Monthly, beginning 08/10/2015 |
| One Final Payment of | $ N/A | N/A |

Late Charge: If a payment is not paid in full within 10 days after it is due, you agree to pay a late charge of 5% of the unpaid amount of the late payment or $10.00, whichever is less.

Prepayment. If you pay off all of your debt early, you will not have to pay a penalty.

Security. You are giving a security interest in the Vehicle being purchased.

Other Terms. Please read all six pages of this contract for additional information about security interests, nonpayment, default, any required repayment in full before the scheduled date, and penalties.

    27.    After signing the Retail Purchase Agreement and the Retail Installment Sales

Contract a North Point Toyota employee told Ms. Okoli she could not take the 2011 Camry home

that day because it was a "certified" used vehicle and had to be cleaned. Ms. Okoli was given a

loaner car and told her car would be ready to pick up on Monday. Ms. Holland also congratulated

Ms. Okoli on the purchase of her vehicle and shook her hand.

    28.    The only way for North Point to provide actual use of the amount financed to Ms.

Okoli was to sign title of the car over to her and to not interfere with her quiet enjoyment and

possession of the vehicle. Merely giving Ms. Okoli temporary possession of the car was not

providing her actual use of the amount financed worth of credit.

**C.**     **North Point Delays Ms. Okoli's delivery of her new car.**

29.     On Monday, July 13, 2015, Ms. Okoli received a call from Rocky Taliaferro, an employee of North Point Toyota. Mr. Taliaferro told Ms. Okoli that Mr. Kirk was on leave, and he would be handling Mr. Kirk's business. Ms. Okoli arrived to pick up the Camry on Monday, July 13, 2015. The Camry's remote was not working, and the maintenance crew had left for the day. Mr. Taliaferro also told Ms. Okoli she would need a Social Security card and proof of income. Ms. Okoli picked up her Camry on July 13, 2015, and the vehicle had a temporary tag. Ms. Okoli sent Mr. Taliaferro a copy of her Social Security card by on July 13, 2015. Ms. Okoli provided Mr. Taliaferro with proof of her income on Thursday, July 16, 2015.

30.     Under the express terms of the Retail Installment Sales Contract, the state common law of assignments and Statutory Law, Defendant Toyota Motor Finance "stepped into the same shoes" of Defendant North Point and became derivatively, jointly, severally and fully liable for all of North Point's misconduct.

31.     On July 22, 2015, Ms. Okoli received two letters thanking her for purchasing a Toyota Certified Used Vehicle. *See* Exhibit Nos. 4 and 5.

**D.**     **North Point Attempts to Back out of the Deal**

32.     On July 28, 2015, Ms. Okoli received a call from North Point Toyota telling her that they needed to speak to her concerning details about her car. That same day, Ms. Okoli went to the North Point dealership and met with Mr. Taliaferro. Mr. Taliaferro told Ms. Okoli there was a problem with her Social Security card, and she could either: (i) get a new Social Security card; (ii) sign a new financing contract; or (iii) return the car. The new finance contract contained a monthly payment of $249 for the same vehicle. Ms. Okoli also met with the Ms. Holland, who told her she was sorry about everything, but she did not get the finance approved.

33.     Ms. Okoli told the Sales Manager she could go to the Social Security Office and have them change her Social Security card. The Sales Manager told her that the matter could not wait, she could bring back the car, sign a new contract, or he would call the police.

34.     Yolanda Davidson, a North Point Sales Associate, gave Ms. Okoli a tissue when she cried after the Sales Manager threatened her with police action. Ms. Okoli became upset and went into the sales office, with Kentrell Canon, a North Point employee.

35.     The Sales Manager returned told Ms. Okoli to get a "Numident Letter." He told her to bring back the paper from the Social Security Office, and she could receive the car.

36.     On July 29, 2015, Ms. Okoli called North Point to make a complaint and left a message with Kyle Fuhrman, the North Point Customer Relations Manager.

37.     On July 30, 2015, Ms. Okoli returned to North Point with her friend Christen Orji. They spoke with Larry Parks, North Point's General Sales Manager. Mr. Parks told them the Motor Vehicle Retail Sales Contract was not valid, and the confusion was due to a mistake on their end.

38.     Ms. Okoli went to the Social Security Office. On July 31, 2015, Mr. Fuhrman called Ms. Okoli and told her to get her new Social Security card by August 10, 2015.

39.     Ms. Okoli received her new Social Security card on the evening of August 10, 2015, and faxed it to "Jim" at North Point Toyota. On August 11, 2015, Ms. Okoli received a call from a "Jim" who said they did not want to repossess her car, and that Ms. Okoli should send her Social Security card to resolve the issue.

40.     On August 22, 2015, Ms. Okoli brought the Toyota Camry back to the dealership, they brought her old car and title, and then she left.

## COUNT I
## VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

41.     Ms. Okoli re-alleges and incorporates by reference all of the paragraphs.

42.     The Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-101, *et seq.*, is designed to protect consumers from deceptive, unfair and unconscionable trade practices.  The ADTPA is a remedial statute, which is liberally construed in favor of consumers.

43.     The Defendants' practices violate the following sections of the ADTPA:

a.     Advertising goods with the intent not to sell them as advertised. Ark. Code Ann. 4-88-107(a)(3).

b.     Employing bait-and-switch advertising with undisclosed conditions precedent to the purchase. Ark. Code Ann. 4-88-107(a)(5).

c.     Knowingly taking advantage of a consumer reasonably unable to protect her interest because of ignorance or inability to understand the language of the agreement. Ark. Code Ann. 4-88-107(a)(8).

d.     Engaging in any unconscionable, false, and deceptive acts or practices in business, commerce or trade. Ark. Code Ann. 4-88-107(a)(10).

44.     The Defendant's conduct also violates Ark. Code Ann. § 4-88-108 by suppressing material facts, and using deception or false pretenses. Ms. Okoli had no specialized knowledge in the purchase and financing of automobiles. Defendants' representations were material and made with the intent to deceive and induce Ms. Okoli to purchase the vehicle.

45.     Defendants' conduct has caused Ms. Okoli to suffer actual damages or injury and incur attorney's fees. Ms. Okoli has suffered damage to her credit rating and credit reputation, lost time and expense for dealing with North Point's recalcitrance, emotional distress, frustration, humiliation and embarrassment, increased purchase costs, deprived use and enjoyment of the vehicle.

46.    The Defendants' actions were reckless, outrageous, willful, and wanton, justifying imposing exemplary, and punitive damages.

## COUNT II
## BREACH OF CONTRACT
## (AGAINST SEPARATE DEFENDANT PRESTIGE TOY, L.L.C.)

47.    Ms. Okoli re-alleges and incorporates by reference all of the paragraphs above.

48.    Ms. Okoli and Defendant Prestige Toy, L.L.C. entered into a Retail Installment Sales Contract.

49.    The Contract Required Prestige Toy, L.L.C. to sell Ms. Okoli a car at a certain interest rate.

50.    Ms. Okoli has done what the contract required of her and attempted to tender payment to Toyota Motor Credit Company.

51.    Defendant Prestige Toy, L.L.C. has not done what the contract required of it.

52.    Ms. Okoli has been damaged because she has been deprived of the purchase of a vehicle at the terms she has bargained for with Defendants.

53.    Alternatively, Ms. Okoli is entitled to specific performance under the contract.

## COUNT III
## VIOLATIONS OF THE EQUAL CREDIT OPPORTUNITY ACT, 15 USC § 1691e(f)

54.    Ms. Okoli re-alleges and incorporates by reference all of the paragraphs above.

55.    This Court has jurisdiction to decide claims brought under the ECOA under 15 U.S.C. § 1691e(f).

56.    Ms. Okoli is an "applicant" as that term is defined in the ECOA. 15 U.S.C. § 1691a(b).

57.    Defendants are "creditors" as the term is defined in the ECOA. 15 U.S.C. § 1691a(e).

58.     Ms. Okoli completed a credit application and/or one was completed on her behalf, applied to Defendants for credit with the purchase of the vehicle from Defendants.

59.     Under the ECOA, Defendants had to give notice of their decision on that credit application to Ms. Okoli within 30 days of receipt. The ECOA also makes is unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction on the basis for national origin. See 15 U.S.C. § 1691(a)(1).

60.     If such credit was approved, the ECOA permitted Defendants to provide notice by means other than written communication. *See* 15 U.S.C. § 1691(d)(1).

61.     Ms. Okoli signed a contract with Defendants that expressly informed her she had been approved for credit in the transaction to purchase the vehicle.

62.     When Defendants informed Ms. Okoli that she had been approved for credit, Defendants knew or had reason to know that Defendants would not extend credit to Ms. Okoli for the vehicle and knew or should have known that the installment contract could not be assigned on terms that would have been acceptable to Ms. Okoli.

63.     Defendants later informed Ms. Okoli she did not qualify for credit to purchase the vehicle, and credit was denied terminating the transaction.

64.     The original notice of approval given to Ms. Okoli was false, and violation of 15 U.S.C. §1691(d). The false notice of credit approval was the "bait" in a "bait and switch" deceptive practice which was designed to defraud Ms. Okoli into purchasing the vehicle on terms less advantageous to her.

65.     The subsequent denial and the revocation of credit constituted an "adverse action" as the phrase is defined in the ECOA. 15 U.S.C. §1691(d). As a result of Defendants' violations

of the ECOA, Plaintiff has suffered injury to her credit reputation, mental anguish, humiliation, and embarrassment.

## COUNT IV
## VIOLATIONS OF THE TRUTH IN LENDING ACT
## (AGAINST SEPARATE DEFENDANT PRESTIGE TOY, L.L.C.)

66.    Ms. Okoli re-alleges and incorporates by reference all of the paragraphs above.

67.    Separate Defendant Prestige Toy, L.L.C. violated the Truth in Lending Act because:

a.    it treated the disclosures on the Credit Contract as estimates about the terms of credit it might provide Plaintiff, and under Regulation Z, 12 C.F.R. §226.17(c)(2), the disclosures should have been marked as estimates;

b.    it failed to disclose accurately the finance charge in violation of 15 U.S.C. § 1638(a)(3), and Regulation Z, 12 C.F.R. § 226.18(d) and 226.4;

c.    it failed to disclose accurately the "amount financed" in violation of 15 U.S.C. § 1638(a)(2) and Regulation Z, 12 C.F.R. § 226.18(b); and

d.    it failed to disclose accurately the "annual percentage rate," in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z, 12 C.F.R. § 226.18(e).

## DEMAND FOR JURY TRIAL

68.    Ms. Okoli demands a trial by a jury of twelve.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Okoli demands judgment against the Defendants for:

A.    Actual and compensatory damages;

B.    Attorney fees and costs;

C.    Punitive damages up to $10,000 under 15 U.S.C. § 1691e(b);

D.    Statutory damages for twice the finance charge in accorance with the Truth in Lending Act, 15 U.S.C. § 1640(a)(2)(A)(i); and

E.    Such other further relief as the Court shall deem just and proper.

DATED: September 1, 2015                    Respectfully Submitted,

                                            /s/ Will Crowder
                                            William T. Crowder, ABN 2003138
                                            Corey D. McGaha, ABN 2003047
                                            CROWDER MCGAHA, LLP
                                            5507 Ranch Drive, Suite 202
                                            Little Rock, AR 72223
                                            Phone: 501.205.4026
                                            Fax: 501.367.8208

                                            Cecille Doan, ABN 2009246
                                            CENTER FOR ARKANSAS LEGAL
                                            SERVICES
                                            1300 West 6th Street
                                            Little Rock, AR 72201
                                            Phone: 501.376.3423
                                            Fax: 501.376.3664

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2015-Sep-01 12:13:00
60CV-15-4106
C06D12 : 1 Page

EXHIBIT A

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
_____DIVISION

LUCY M. OKOLI                                          **PLAINTIFF**

v.                          Case No. _____

ASBURY AUTOMOTIVE
ARKANSAS L.L.C.,
PRESTIGE TOY, L.L.C., and
John Does 1-100                                        **DEFENDANTS**

### AFFIDAVIT

I, William T. Crowder, duly licensed attorney practicing with Crowder McGaha, LLP, being duly sworn, state upon oath:

1.     That I am an attorney for the Plaintiff.

2.     That the identities of the persons and/or entities named as Defendants John Doe 1-100 are unknown to Plaintiff and Plaintiff's Attorney.

3.     This Affidavit is intended to comply with the requirement of Ark. Code Ann. § 16-56-125(c) that an Affidavit be filed with Plaintiff's Complaint when the identity of a tortfeasor or tortfeasors is unknown.

AFFIANT FURTHER SAITH NOT.

_____
Will T. Crowder, Ark. Bar. No. 2003-138

STATE OF ARKANSAS     )
                      )
COUNTY OF PULASKI     )

SUBSCRIBED AND SWORN TO before me this 1�day of Sept, 2015.

_____
Notary Public

LAURIE PERRY
PULASKI COUNTY
NOTARY PUBLIC - ARKANSAS
My Commission Expires March 03, 2019
Commission No. 12370174

Page 1 of 1

**ELECTRONICALLY FILED**
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2015-Sep-01  12:13:00
60CV-15-4106
C06D12 : 5 Pages

# EXHIBIT No. 1

Retail Purchase Agreement

*Lucy M. Okoli v. Asbury Automotive Arkansas, L.L.C., et al.*
Circuit Court of Pulaski County, Arkansas

Plaintiff's Complaint



**North Point Toyota**
4336 Landers Road, North Little Rock, AR 72117
(501) 753-0400 Fax: (501) 753-6714
www.northpointtoyota.com

**RETAIL PURCHASE AGREEMENT**

DEAL# 615589
CUST# 39109958

I hereby agree to purchase from you under the following terms and conditions:  ☐ NEW  ☐ USED  ☐ DEMONSTRATOR  ☐ PRIOR RENTAL/LEASE

| YEAR | MAKE | MODEL | COLOR | TRIM | SALESPERSON | DATE 07/11/15 |
|------|------|-------|-------|------|-------------|------|

| ODOMETER READING | VIN NUMBER | | PURCHASER'S NAME (Please Print) | OKULI |

| STOCK NO. | NO. OF CYLINDERS | BODY STYLE | Address 2 GREEN MTN DR APT 387 |

City LITTLE ROCK  County PULASKI  State AR  Zip Code

Residence Phone 1-8450  Business Phone / Extension

### WARRANTY STATEMENT

We are selling this Vehicle to you "AS-IS" and we expressly disclaim all warranties, express and implied, including any implied warranties of merchantability and fitness for a particular purpose, unless the box beside the "Used Vehicle Limited Warranty Applies" is marked below, or we enter into a service contract with you at the time of, or within 90 days of, the date of this transaction. Any warranties by a manufacturer or supplier other than our Dealership are theirs, **not** ours, and only such manufacturer or supplier shall be liable for performance under such warranties. We neither assume nor authorize any other person to assume for us any liability in connection with the sale of the Vehicle and the related goods and services. Oral promises or affirmations of fact **will not** be recognized and shall not be construed as a warranty of any kind.

**CONTRACTUAL DISCLOSURE STATEMENT** (USED VEHICLES ONLY) The information you see on the window form for this Vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale. *Traducción española: Vea el dorso.*

☐ Used Vehicle Limited Warranty Applies. We are providing the attached Used Vehicle Limited Warranty in connection with this transaction. Any implied warranties apply for the duration of the Limited Warranty.

Service Contract Co.: _____

Time Period: _____ or Mileage Limit _____ (whichever first)

Deductible: _____

**"DEALER SERVICE AND HANDLING FEE: A Service and Handling Fee is not an official fee. A Service and Handling Fee is not required by law, but may be charged to customers for performing services and handling documents relating to the closing of a sale or lease. The Service and Handling Fee may result in profit to the dealer. The Service and Handling fee does not include payment for the preparation of legal documents. This Notice is required by law.**

| VEHICLE AND ACCESSORIES CASH PRICE | 12940.72 |
|---|---|
| KEY REPLACEMENT | 454.00 |
| | N/A |
| | N/A |
| | |
| | |
| | |
| SALES TAX | |
| | N/A |
| | N/A |
| | N/A |
| | N/A |
| | N/A |
| | N/A |
| | N/A |
| | N/A |
| | N/A |
| | N/A |

### DESCRIPTION OF TRADE-IN

| Odometer Reading | Make | Color | Cyl |
|---|---|---|---|
| Year | Model | Body Type | Stock No. |
| Serial Number | | License No. | |
| Balance Owed to | | Quoted By | |
| | | Good til | |
| Tel # | Account No. | Title # | |
| Trade-In Allowance | Balance Owed 0.00 | | |

| | | |
|---|---|---|
| **TRADE-IN BALANCE OWED AND NEGATIVE EQUITY DISCLOSURE** | | N/A |
| I understand the Balance Owed on my Trade-In has been estimated to be $ _____. This figure is an estimate only and is subject to verification. Upon verification by the Lienholder, the actual payoff figure will be compared to the above estimate. If the actual figure is less than the estimated figure, the Dealership will refund the difference to me upon receipt of the title with the lien properly released. If the actual figure is greater than the estimated figure, I agree to pay the difference to the Dealership upon notification that the shortage exists. | | N/A |
| | | N/A |
| | | N/A |
| | *DEALER SERVICE AND HANDLING FEE | 129.95 |
| ☐ Security Deposit included in Payoff  ☐ Security Deposit not included in Payoff | PLUS TRADE-IN VEHICLE BALANCE OWED (Includes any Negative Equity**) | N/A |
| **NEGATIVE EQUITY: I am aware and have agreed that if the Balance Owed on my Trade-In exceeds the Trade-In Allowance from the Dealer, the difference (known as the "Negative Equity") will be added to and included in the Unpaid Balance of Cash Price. | | N/A |
| | | N/A |
| I further agree that the Representations Regarding the Trade-In Vehicle in Paragraph 7 on the reverse side are true and correct. | CASH AT FINANCE | N/A |
| | | N/A |
| X _____ X _____ | | N/A |
| **ACKNOWLEDGEMENT OF RECEIPT: I HEREBY ACKNOWLEDGE THAT I HAVE RECEIVED A WRITTEN STATEMENT EXPLAINING MY RIGHTS AND OBLIGATIONS UNDER ARKANSAS NEW MOTOR VEHICLE QUALITY ASSURANCE ACT (A.C. A 4-90-400 et seq) AND HAVE HAD THE OPPORTUNITY TO REVIEW THE SAME.** | | N/A |
| | | N/A |
| | | N/A |
| **Customer Signature**          **Date** | **UNPAID BALANCE DUE** | |
| **NOTICE OF STATE SALES TAX** | **CASH DUE AT DELIVERY** | |
| ☐ State Sales tax will be paid for by the customer. | | |
| ☐ State Sales tax will be included in the amount financed. | **AMOUNT TO BE FINANCED** | |

The front and back of this Agreement and any documents which are part of this transaction or incorporated herein comprise the entire agreement affecting this Retail Purchase Agreement and no other agreement or understanding of any nature concerning the same has been made or entered into, or will be recognized. I have read the terms and conditions of this Agreement, including the terms and conditions that appear on the reverse side, and agree to them as if they were printed above my signature. I further acknowledge that I am 18 years of age or older and receipt of a copy of this Agreement. This Agreement shall not become binding until signed and accepted by an Authorized Dealership Representative.

NOTICE: This is a legal document. You have the right to review this document with an attorney of your choice before signing. By signing this document, I/We acknowledge that I/We have consulted an attorney of our choice, or declined to do so.

ACCEPTED BY: _____

DEALERSHIP REPRESENTATIVE          DATE                    PURCHASER SIGNATURE          DATE


CO-PURCHASER SIGNATURE          DATE

The Reynolds and Reynolds Company  FL635201 Q (05/15)

## ADDITIONAL AGREEMENTS BETWEEN THE DEALERSHIP AND PURCHASER(S)

1. **Terms Used in This Agreement:** This Retail Purchase Agreement contains the following words and phrases that appear throughout this Agreement and have particular meanings:

   - **Agreement** - Means this Retail Purchase Agreement together with any documents incorporated into this Agreement by reference, whether such reference is made in this Agreement or in the document itself.
   - **You, Your** - Means the Purchaser identified on the front side of this Agreement.
   - **We, Us, Our** - Means the Dealership that is identified on the front side of this Agreement and its Authorized Representatives.
   - **Manufacturer** - Means the company that manufactured the Vehicle.
   - **Vehicle** - Means the Vehicle that you are purchasing from us as described on the front of this Agreement.
   - **Trade-In Vehicle** - Means the vehicle you are delivering to us as part of this transaction as identified on the front side of this Agreement.

2. **Our Right to Increase the Price:** We may increase the price of the Vehicle after we accept this Agreement if the Trade-In Vehicle is reappraised, new equipment is required by state or federal law, or the increase is caused by state or federal tax rate changes. If the price is increased, you may cancel this Agreement with full refund of any down payment, provided that the cancellation occurs prior to you taking delivery of the purchased Vehicle.

3. **Manufacturer's Design Changes:** In the event the Manufacturer changes or modifies the design of any part or accessory of the Vehicle after your order for the Vehicle has been entered by us, you will not have any claim or right against us if the Vehicle does not contain such changes or modifications, nor shall we be required to effect such changes or modifications to the Vehicle.

4. **Your Representations and Warranties:** You represents, warrant and affirms to us that (a) You are not purchasing a new Vehicle for resale or export within the period beginning on the date the Vehicle title is issued to you and ending on the date one (1) year thereafter. You confirm we are relying on this representation and agree that we would not sell the Vehicle to you without this representation. If we are required by the manufacturer to forfeit or repay any manufacturer incentives, allowance and/or special pricing, or if we suffer any loss or harm as a result of your breach of this provision, you agree to indemnify and hold us harmless from any such cost, loss or harm suffered as a result of or arising because of your breach; (b) the down payment and any amounts due to us have been paid in full, any check given to us will be honored by your Bank, and that no part of the down payment has been loaned to you by us or any third party; (c) all statements made by you in this Agreement and any other documents completed in connection with this transaction are true and correct; and (d) you are who you have represented yourself to be and you have purchased the Vehicle for your own use and not on behalf of another person, unless you have disclosed otherwise to us.

5. **Delivery:** You agree to accept delivery of the Vehicle as ordered within 48 hours after notification that the Vehicle is ready for delivery.

6. **Cash Transaction:** In the case of a cash transaction, title to the Vehicle shall not pass to you until we have received, in cash, the full amount of the Unpaid Balance Due. If, however, we elect in our sole discretion to pass title to the Vehicle to you prior to receipt of the total Unpaid Balance Due as shown on the reverse side hereof, the passing of such title shall not relieve you of your obligation to pay in full the Unpaid Balance Due.

7. **Your Representations Regarding the Trade-In Vehicle:** Any Trade-In Vehicle delivered by you to us in connection with this transaction shall be accompanied by a Certificate of Title or documents sufficient to enable us to obtain a Certificate of Title to the Trade-In Vehicle in accordance with applicable state law. You warrant that the Trade-In Vehicle delivered to us is properly titled to you, has never been titled as or declared a salvage, junk, rebuilt or lemon buyback vehicle; that you have the right to sell or otherwise convey such Trade-In Vehicle; that such Trade-In Vehicle is free and clear of liens or encumbrances, except as may be noted on the front side of this Agreement; that all emission control equipment is on the Trade-In Vehicle appears properly connected and undamaged; and is in satisfactory working order; the chassis has not been welded or rebuilt; the engine block is not welded or cracked; the seatbelts and/or airbags have not been removed or disabled; any prior damage has been disclosed; and, unless you have told us otherwise, that you have not removed equipment from the Trade-In Vehicle subsequent to our appraisal and that the odometer reading shown is accurate. This Agreement incorporates by reference the Trade-In Vehicle Affidavit.

8. **Our Appraisal of Your Trade-In Vehicle:** If you are delivering a Trade-In Vehicle to us in connection with this transaction and the delivery will not be made until delivery of the Vehicle being purchased from us, we shall have the right to reappraise your Trade-In Vehicle at the time of delivery. The reappraised amount shall be the amount allowed for the Trade-In Vehicle in this transaction. If you are dissatisfied with the reappraisal, you may cancel this Agreement with full refund of any down payment, provided that the cancellation occurs prior to you taking delivery of the purchased Vehicle.

9. **Our Right to Cancel this Agreement:** We may cancel this Agreement if: (1) your credit application is not approved by a financing source; (2) your purchase is subject to a Conditional Delivery Agreement [Seller's Right to Cancel] and the retail installment sale contract is not accepted or approved by a financing source on terms acceptable to us; (3) we cannot deliver the Vehicle as specified on the front side of this Agreement. You agree that we are not liable for any damages resulting from our failure to deliver the Vehicle if the failure is caused by an accident, fire, act of nature, or any other causes beyond our control.

10. **Remedies Upon Rightful Cancellation:** You agree that we are not liable for any damages resulting from our failure to deliver the Vehicle in accordance with this Agreement if the failure is caused by the manufacturer, an accident, fire, act of nature or any other cause beyond our control. If this Agreement is cancelled: (1) pursuant to Paragraph 2 or 9; (2) before this Agreement is signed by an authorized Representative of the Dealership; or (3) because you are dissatisfied with our reappraisal of your Trade-In Vehicle, your down payment will be returned to you if the Vehicle is returned to the Dealership in the same condition as delivered to Purchaser, normal wear and tear excepted, within 24 hours of receiving written or oral notice from the Dealership. If you have delivered a Trade-In Vehicle to us, the Trade-In Vehicle shall be returned to you if we have not already sold it. If we have sold the Trade-In Vehicle prior to your cancellation, you will be paid the agreed upon Trade-In Allowance, less the Balance Owed on the Trade-In Vehicle if we have paid the Balance Owed to the Lienholder. Purchaser is responsible for paying the cost of repairing any damage and any other losses, liabilities, damages, claims, costs and expenses arising out of his/her use, possession and control of the Vehicle. We may keep any portion of the amount you have paid to us as a down payment to offset against the amount you owe us. If the actual amount you owe to us is greater than the amount of the down payment, you agree to pay the difference to us.

11. **Purchaser's Default and Dealership's Remedies:** In the event of any failure by you to perform your obligations under this Agreement or any breach by you of a representation or warranty made by you to us, all be permitted, at our sole discretion, to the choice of remedies in this Agreement, which may be used separately or together, including: (1) cancel this Retail Purchase Agreement; (2) repossess the Vehicle without notice; (3) rescind the sales transaction; (4) seek collection for an amount due; and/or (5) retain any cash down payment made by you for an event of and (6) in the event that you have delivered a Trade-In Vehicle as part of the consideration for your purchase of the Vehicle from us, to sell such Trade-In Vehicle and reimburse the Dealership out of the proceeds of such sales for any reasonable expenses incurred in connection with preparing and offering the Trade-In Vehicle for sale and any actual damages suffered by us as a result of your default. Regardless of whether we return the Trade-In Vehicle or have already sold it, you shall be responsible for paying to us the Balance Owed on the Trade-In Vehicle if we have paid the Balance Owed to the Lienholder and any reasonable expenses incurred by us in connection with preparing or reconditioning the Trade-In Vehicle for sale. We shall further be entitled to recover from you for an event of default any costs incurred by us for repossession/collection, reasonable interest, plus reasonable attorney's fees. Any remedies in this Paragraph 11 shall be in addition to, and not in lieu of, any other remedies available under the Retail Purchase Agreement or at law or equity. Any waiver of all or part of a remedy hereunder is not a continuing waiver. If the actual amount you owe to us is greater than the amount of the down payment and/or proceeds from the sale of your Trade-In Vehicle, you agree to pay the difference to us upon demand and if the actual amount you owe is less, then we will pay the difference to you.

12. **Security Agreement:** Purchaser hereby grants the Dealership, its successors and assigns, a security interest in the Vehicle, equipment and accessories to be purchased pursuant to this Agreement, and such security interest shall remain in effect until all sums due hereunder have been paid in full.

13. **Taxes:** The price for the Vehicle specified on the face of this Agreement includes reimbursement for federal excise taxes, but does not include sales taxes, use taxes or occupational taxes based on sales volume (federal, state or local) unless expressly so stated. Purchaser assumes and agrees to pay, unless prohibited by law, any such sales, use or occupational taxes imposed on or applicable to the transaction covered by this Agreement, regardless, of which party may have the primary tax liability.

14. **Other Products and Lending Sources:** The Dealership offers its customers optional goods and services from various suppliers. The amounts charged to the customers for such goods and services may be greater that the Dealership's cost, and/or the Dealership may receive a commission or other payment in connection with such sale. You are not required to purchase any other goods or services from us, nor are you required to finance the Unpaid Balance Due under this Agreement with a particular lending source. In the event this Agreement includes a charge for other goods or services for which you must complete an application for coverage, and for any reason such coverage cannot be provided, you will receive a credit for the amount charged. If the cost of other goods or services was included in the amount to be financed in connection with this transaction, then this credit will be applied to the outstanding balance you owe to the lender. No insurance coverage is provided under this Agreement.

15. **Dealer Assisted Financing:** if we assist you to obtain financing for this transaction, the Annual Percentage Rate may be negotiated with us and we may receive a fee, commission or other compensation from the Lender.

16. **GOVERNING LAW AND VENUE:** THE TERMS AND CONDITIONS OF THIS AGREEMENT (INCLUDING ANY DOCUMENTS WHICH ARE A PART OF THIS TRANSACTION OR INCORPORATED HEREIN BY REFERENCE) AND ANY SALE HEREUNDER WILL BE GOVERNED BY THE LAWS OF THE STATE OF ARKANSAS. THE PROPER VENUE FOR ALL ACTIONS ARISING UNDER OR RELATED TO THIS AGREEMENT SHALL BE THE COUNTY WHERE THE DEALERSHIP IS LOCATED.

17. **LIMIT ON DAMAGES:** PURCHASER SHALL NOT BE ENTITLED TO RECOVER FROM THE DEALERSHIP ANY CONSEQUENTIAL DAMAGES, DAMAGES TO PROPERTY, DAMAGES FOR LOSS OF USE, LOSS OF TIME, LOSS OF PROFITS OR INCOME, OR ANY OTHER INCIDENTAL DAMAGES.

18. **Notice Regarding Legal Documents:** Certain documents in this transaction will affect your legal rights and also will create or impose certain legal duties, responsibilities, obligations, or abilities. IF YOU HAVE ANY QUESTIONS OR CONCERNS ABOUT THESE DOCUMENTS OR ANY ASPECT OF THE PROPOSED SALE OR ABOUT ANY OTHER MATTERS LEGAL IN NATURE, YOU ARE STRONGLY URGED TO CONSULT WITH AN ATTORNEY OF YOUR CHOOSING PRIOR TO SIGNING ANY DOCUMENT OR COMPLETING THIS TRANSACTION. The Dealership personnel will complete certain portions of the documents by filling in the blanks with information specific to your transaction. The Dealership has had the forms which will be used to prepare these documents reviewed and approved by an Arkansas lawyer. The Dealership or its personnel does not engage in the practice of law and cannot give advice or opinions as to the legal rights of parties, as to the legal effects of any documents, or as to any legal matter. The completion of such documents by the filling in of these blanks is a normal and customary activity of the Dealership routinely performed in the ordinary course of the business of the Dealership. These forms are used only in connection with transactions handled by the Dealership as a motor vehicle dealer. There is no fee or charge for the completion of documents or the provision of any services deemed to be legal in nature. By signing the documents, you are expressly authorizing the Dealership to complete the documents by filling in the blanks. You also acknowledge that you either consulted an attorney or declined to do so. The transaction proposed between you and the Dealership is an arms-length business transaction. You hereby specifically agree that no fiduciary duty or other similar duty or confidential relationship exists between you and the Dealership.

19. **CONTRACTUAL DISCLOSURE STATEMENT (USED VEHICLES ONLY)** The information you see on the window form for this Vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale. **SPANISH TRANSLATION:** Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla parta este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2015-Sep-01  12:13:00
60CV-15-4106
C06D12 : 7 Pages

# EXHIBIT No. 2

Retail Installment Sales Contract

*Lucy M. Okoli v. Asbury Automotive Arkansas, L.L.C., et al.*
Circuit Court of Pulaski County, Arkansas

Plaintiff's Complaint

# MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT
# SIMPLE INTEREST CHARGE – ARKANSAS


**TOYOTA**
FINANCIAL SERVICES

Dealer Number: __0000003061__     Contract Date: __07/11/2015__

**BUYER AND CO-BUYER NAME(S) AND ADDRESS(ES)**
LUCY OKOLI
1912 GRENN MOUNTAIN DR APT 387
Little Rock, County of PULASKI, AR 72212

**CREDITOR (SELLER NAME AND ADDRESS)**
PRESTIGE TOYOTA, LLC.
4336 LANDERS ROCK
NORTH LITTLE ROCK, AR 72117

**Meaning of Words.** In this contract, the words "you," "your" and "yours" refer to the Buyer and Co-Buyer, if any. The word "Creditor" refers to the Creditor (Seller) named above and, after assignment, to Toyota Motor Credit Corporation ("TMCC") and any subsequent assignee.

**Who is Bound.** You may buy the vehicle described below for cash or on credit. The cash price is shown on page two as "Cash Price." The credit price is shown below as "Total Sale Price." By signing this contract, you choose to buy the vehicle on credit under the terms on all six pages of this contract and you are individually liable to the Creditor for any amount due.

**Description of Vehicle.** You agree to buy the vehicle and the Creditor agrees to sell you the following motor vehicle, the "Vehicle":

**Vehicle**
2011 Toyota Camry 4dr Sdn I4 Auto LE

| New, Used, or Demo | Vehicle Identification Number | Primary Purpose | Odometer Mileage |
|---|---|---|---|
| Used | 4T1BF3EK0BU718397 | Personal | 57826 |

**Trade-In Vehicle**
2004 Hyundai Santa Fe

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of |
|---|---|---|---|---|
| 4.50 % | $ 1,838.10 | $ 12,332.40 | $ 14,170.50 | $ 2,000.00 is $ 16,170.50 |

Your Payment Schedule Will Be:

| Number of Payments: | Amount of Each Payment: | When Payments Are Due: |
|---|---|---|
| One Deferred Downpayment of | $ N/A | N/A |
| 75  Regular Payments of | $ 188.94 | Monthly, beginning  08/10/2015 |
| One Final Payment of | $ N/A | N/A |

**Late Charge:** If a payment is not paid in full within 10 days after it is due, you agree to pay a late charge of 5% of the unpaid amount of the late payment or $10.00, whichever is less.

**Prepayment.** If you pay off all of your debt early, you will not have to pay a penalty.

**Security.** You are giving a security interest in the Vehicle being purchased.

**Other Terms.** Please read all six pages of this contract for additional information about security interests, nonpayment, default, any required repayment in full before the scheduled date, and penalties.

---

### THE ANNUAL PERCENTAGE RATE MAY BE NEGOTIATED WITH THE DEALER.
### THE DEALER MAY ASSIGN THIS CONTRACT AND RETAIN ITS RIGHT
### TO RECEIVE A PART OF THE FINANCE CHARGE.

3103AR (06/01/14)

# MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT
# SIMPLE INTEREST CHARGE – ARKANSAS



## Itemization of Amount Financed

| | | | |
|---|---|---|---|
| 1. | Cash Price (including any accessories, services and other taxes) | | $ 14,203.40 (1) |
| 2. | Downpayment | | |
| | A. Gross Trade-in Value | $ 2,000.00 | |
| | B. Payoff of Existing Lien or Lease Balance on Trade-in Vehicle | $ 0.00 | |
| | C. Net Trade-in Value (A - B) (indicate if negative number) | $ 2,000.00 | |
| | D. Remaining Cash Downpayment (including Deferred Downpayment of $ _____ N/A payable before the due date of the first regularly scheduled payment) | $ N/A | |
| | E. Rebates and Non-Cash Incentives | $ N/A | |
| | F. Subtotal (C + D + E) | $ 2,000.00 | |
| | G. TOTAL DOWNPAYMENT (if Subtotal is negative, Total Downpayment is $0.00) | | $ 2,000.00 (2) |
| 3. | Unpaid Balance of Cash Price (1 minus 2) | | $ 12,203.40 (3) |
| 4. | Other Charges including amounts paid to others on your behalf (Seller may keep or receive part of these amounts): | | |
| | A. Cost of Required Physical Damage Insurance Paid to the Insurance Company Named Below – Covering Damage to the Vehicle | $ N/A | |
| | B. Cost of Optional Credit Insurance Paid to the Insurance Company or Companies Named Below | | |
| | Life $ _____ N/A  Disability, Accident and Health $ _____ N/A | $ N/A | |
| | C. Cost of Optional Mechanical Breakdown Protection Paid to the MBP Company Named Below – Covering Certain Mechanical Repairs | $ N/A | |
| | D. Cost of Optional Guaranteed Auto Protection Paid to the GAP Company Named Below | $ N/A | |
| | E. Official Fees Paid to Public Officials | $ N/A | |
| | F. Taxes Paid to Government Agencies (Not Included in Cash Price) | $ N/A | |
| | G. Government License Fees | $ N/A | |
| | H. Government Registration Fees | $ N/A | |
| | I. Government Certificate of Title Fees | $ N/A | |
| | J. SERVICE AND HANDLING FEE | $ 129.00 | |
| | A SERVICE AND HANDLING FEE IS NOT AN OFFICIAL FEE. A SERVICE AND HANDLING FEE IS NOT REQUIRED BY LAW BUT MAY BE CHARGED TO THE CUSTOMER FOR PERFORMING SERVICES AND HANDLING DOCUMENTS RELATING TO THE CLOSING OF A SALE OR LEASE. THE SERVICE AND HANDLING FEE MAY RESULT IN PROFIT TO THE DEALER. THE SERVICE AND HANDLING FEE DOES NOT INCLUDE PAYMENT FOR THE PREPARATION OF LEGAL DOCUMENTS. THIS NOTICE IS REQUIRED BY LAW. | | |
| | K. Other Charges (Creditor must identify who will receive payment and describe purpose) | | |
| | To N/A       For N/A | $ N/A | |
| | To N/A       For N/A | $ N/A | |
| | To N/A       For N/A | $ N/A | |
| | To N/A       For N/A | $ N/A | |
| | To N/A       For N/A | $ N/A | |
| | To N/A       For N/A | $ N/A | |
| | To N/A       For N/A | $ N/A | |
| | To N/A       For N/A | $ N/A | |
| | Total Other Charges and Amounts Paid to Others on Your Behalf | | $ 129.00 (4) |
| 5. | Amount Financed – Unpaid Balance (3+4) | | $ 12,332.40 (5) |

3103AR (06/01/14)

# MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT
# SIMPLE INTEREST CHARGE – ARKANSAS


**TOYOTA**
FINANCIAL SERVICES

## REQUIRED PHYSICAL DAMAGE INSURANCE

Physical damage insurance is required, but you may provide the required insurance coverage through an existing policy of insurance owned or controlled by you or through anyone you want who is reasonably acceptable to the Creditor. If you buy it through the Creditor and are accepted by the insurance company, the policies or certificates issued by the insurance company will describe the terms and conditions. The cost of this insurance is shown in 4A of the Itemization Section.

Insurance Company N/A _____ Term: __N/A__ months

☐ $ _____N/A Deductible Collision and either:

☐ $ _____N/A Deductible Comprehensive including

Fire, Theft and Combined Additional Coverage

Optional, if desired – ☐ Towing and Labor Costs   ☐ Rental Reimbursement   ☐ CB Radio Equipment   ☐ Fire, Theft, and Combined Additional Coverage

## OPTIONAL INSURANCE AND OTHER OPTIONAL PRODUCTS

Optional Credit Life Insurance. Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost, which is shown below and in 4B of the Itemization Section.

☐ Credit Life - ☐ Single Coverage   ☐ Joint Coverage   Term (Months) N/A   Premium $ _____N/A

I want the specified credit life coverage.

| Buyer Signature | Date | Co-Buyer Signature | Date |
|---|---|---|---|
| N/A        A. N/A | | N/A        A. N/A | |

☐ Credit Disability - Single Coverage (Buyer Only)   Term (Months) N/A   Premium $ _____N/A

I want the specified credit disability coverage.

| Buyer Signature | Date | Co-Buyer Signature | Date |
|---|---|---|---|
| N/A        B. N/A | | N/A        B. N/A | |

If you elect optional credit insurance coverage and are accepted by the insurance company, the terms and conditions will be as described in the policies or certificates issued by the insurance company. The original amount of the decreasing term credit life insurance will not exceed $ _____N/A . Credit disability insurance payments will equal the monthly payment amount but will not be more than $ _____N/A.

Insurance Company N/A _____

THE INSURANCE, IF ANY, REFERRED TO IN THIS CONTRACT DOES NOT INCLUDE LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS.

Optional Mechanical Breakdown Protection. Mechanical breakdown protection is not required to obtain credit and you may purchase it from anyone you want who is reasonably acceptable to the Creditor. You may purchase mechanical breakdown protection under this contract by signing below and agreeing to pay the additional cost, which is shown in 4C of the Itemization Section.

The term of this protection will be _N/A_ months from the date of delivery or until the odometer of the vehicle shows _____N/A miles, whichever occurs first. If you purchase this protection, you have reviewed the terms of the contract which describes this protection and you understand that a copy of the completed contract will be sent to you as soon as practicable.

MBP Company N/A _____ $ _____N/A Deductible

I (WE) WANT THE OPTIONAL MECHANICAL BREAKDOWN PROTECTION FOR WHICH THE COST IS INCLUDED ABOVE.

| Buyer Signature | Date | Co-Buyer Signature | Date |
|---|---|---|---|
| N/A        C. N/A | | N/A        C. N/A | |

Optional Debt Cancellation Agreement or Guaranteed Auto Protection ("GAP") Coverage: GAP is not required to obtain credit. It will not be provided unless you sign and agree to pay the additional cost, which is shown in 4D of the Itemization Section. If you elect this optional GAP coverage and are accepted by the GAP provider, the terms and conditions will be as described in the GAP agreement issued by that provider.

GAP Provider N/A _____

I (WE) WANT THE OPTIONAL GAP COVERAGE FOR WHICH THE COST IS INCLUDED ABOVE.

| Buyer Signature | Date | Co-Buyer Signature | Date |
|---|---|---|---|
| N/A        D. N/A | | N/A        D. N/A | |

3103AR (06/01/14)

# MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT
# SIMPLE INTEREST CHARGE – ARKANSAS



---

## Other Important Agreements

**1. Payments Before or After Scheduled Due Date.** This is a simple interest contract. This means that the amount of the Finance Charge may vary. The Finance Charge and Total of Payments shown on the front of the contract are based on the assumption that all payments are made when due. The Creditor credits each payment first to accrued Finance Charge, then to the unpaid balance of the Amount Financed and the remainder to unpaid charges. The Creditor computes your Finance Charge each day on the unpaid balance of the Amount Financed. The earlier you make payments before their due dates, the less Finance Charge you will owe. The Creditor will send you a check for any amount owed to you after your last payment. The later you make payments after they are due, the greater the Finance Charge. The Creditor will advise you of any additional amount you owe at the end of the contract term. You understand that payment of any installment after it is due will be a default on your part as stated below.

**2. Ownership, Location and Risk of Loss.** You agree to pay the Creditor all you owe under this contract even if the vehicle is damaged, destroyed or missing. You agree not to sell, transfer, rent, lease or remove the vehicle from the state in which you reside on the date of this contract without the prior written permission of the Creditor. The vehicle will be kept at the address you specify in this contract unless another address is provided to the Creditor in writing. You will notify the Creditor in writing of any change in your address where the vehicle is regularly located. Under no circumstances will you be permitted to remove the vehicle from the United States, except to Canada and then only for a period of 30 days or less. You agree to keep the vehicle properly maintained. You agree not to expose the vehicle to misuse or confiscation. You will make sure the Creditor's security interest (lien) on the vehicle is shown on the title.

**3. Taxes and Other Charges.** You are responsible for and will pay when due all taxes, repair bills, storage bills, fines, assessments and other charges in connection with the vehicle. If you fail to pay these amounts the Creditor may do so for you. If the Creditor does so, you agree to repay the amount when the Creditor asks for it. You agree to comply with all registration, licensing, tax and title laws applicable to the vehicle.

**4. Security Interest.** You hereby grant the Creditor a security interest in: (1) the vehicle being purchased, any accessories and equipment then installed in the vehicle, any accessions installed in or affixed to the vehicle and any replacement parts installed in the vehicle; (2) insurance premiums, and charges for mechanical breakdown protection and guaranteed auto protection contracts returned to the Creditor; (3) proceeds of any insurance policies, mechanical breakdown protection or guaranteed auto protection contracts on the vehicle; and (4) proceeds of any insurance policies on your life or health which are financed in this contract. This secures payment of all amounts you owe in this contract and in any transfer, renewal, extension, refinancing or assignment of this contract. It also secures your other agreements in this contract.

**5. Required Physical Damage Insurance.** You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. The physical damage insurance must name the Creditor as loss payee and must require 10 days advance written notice to the Creditor before any cancellation or reduction in the insurance coverage. You agree to deliver promptly to the Creditor whatever written proof of insurance coverage the Creditor may reasonably request. At any time during the term of this contract, if you do not have physical damage insurance which covers both the interest of you and the Creditor in the vehicle, then the Creditor may buy it for you. If the Creditor does not buy physical damage insurance which covers both interests in the vehicle, it may, if it decides, buy insurance which covers only the Creditor's interest.

The Creditor is under no obligation to buy any insurance, but may do so if it desires. If the Creditor buys either of these coverages, it will let you know what type it is and the charge you must pay. The charge will consist of the cost of the insurance and a finance charge at the Annual Percentage Rate applicable to this contract or, if that rate is not authorized, the highest lawful contract rate. You agree to pay the charge in equal installments along with the payments shown on the payment schedule.

If the vehicle is lost or damaged, you agree that the Creditor can use any insurance settlement either to repair the vehicle or to apply to your debt.

**6. Late Charge.** If any payment is not paid in full within 10 days after it is due, you agree to pay a late charge of 5% of the unpaid amount of the late payment or $10.00, whichever is less. Acceptance of a late payment or late charge does not excuse your late payment or mean that you can keep making payments after they are due. The Creditor may also take the steps set forth below if there is any late payment.

**7. Insurance or Optional Contracts.** This contract may contain charges for insurance, mechanical breakdown protection or guaranteed auto protection contracts. If you default under this contract, you agree that the Creditor may claim benefits under these contracts and terminate them to obtain refunds for unearned charges. You agree to cooperate with the Creditor in collecting any proceeds or cancellation refunds, including executing all necessary papers.

**8. Insurance or Optional Contract Charges Returned to Creditor.** If any charge for required insurance is returned to the Creditor, it may be credited to your account or used to buy similar insurance or insurance which covers only the Creditor's interest in the vehicle. Any refund on optional insurance, mechanical breakdown protection or guaranteed auto protection contracts obtained by the Creditor will be credited to your account. Credits to your account will include both the amounts received by the Creditor and the unearned finance charge on those amounts. These credits will be applied to as many of your installments as they will cover.

**9. Default and Required Repayment in Full Before the Scheduled Date.** You will be in default under this contract if you fail to pay any payment according to the payment schedule; if bankruptcy or insolvency proceedings are initiated by or against you; if any person tries to take any of your property by legal proceedings while it is in your possession or control; or if you break any of the agreements in this contract. If you are in default, the Creditor can accelerate the payments under this contract and demand that you pay all that you owe at once. The Creditor may also take the steps set forth below if you default under this contract.

**10. Repossession of the Vehicle for Failure to Pay.** If you default under this contract, the Creditor can take the vehicle from you (repossession). To take the vehicle the Creditor can enter your property, or the property where it is stored, so long as it is done peacefully and lawfully. If there is any personal property in the vehicle, such as clothing, the Creditor can store it for you. Any accessories, equipment or replacement parts will remain with the vehicle.

**11. Getting the Vehicle Back After Repossession.** If the Creditor repossesses the vehicle, you have the right to get it back (redeem) by paying the entire amount you owe on the contract (not just past due payments) plus any late charges, the cost of taking and storing the vehicle and other expenses that the Creditor or assignee has had. Your right to redeem will end when the vehicle is sold or when the Creditor enters into a contract for its disposition, whichever occurs first.

**12. Sale of the Repossessed Vehicle.** The Creditor will send you a written notice of sale at least 10 days before selling the vehicle. If you do not redeem the vehicle by the date on the notice, the Creditor can sell it. The Creditor will use the net proceeds of the sale to pay all or part of your debt.

To the extent permitted by law, the net proceeds of sale will be figured this way: Any late charges and any charges for taking, storing, cleaning, advertising, leasing and/or selling the vehicle will be subtracted from the selling price.

If you owe the Creditor less than the net proceeds of sale, the difference is owed you, unless the Creditor is required to pay it to someone else. For example, the Creditor may be required to pay a lender who has given you a loan and also taken a security interest in the vehicle.

If you owe more than the net proceeds of sale, you agree to pay the difference between the net proceeds of sale and what you owe when the Creditor asks for it. If you do not pay this amount when asked, you may also be charged interest at the Annual Percentage Rate applicable to this contract, not to exceed the highest lawful rate, until you do pay all you owe.

**13. Collection Costs.** To the extent permitted by applicable law, you agree to reimburse the Creditor for all out-of-pocket collection expenses and reasonable attorneys' fees. These expenses include, but are not limited to, costs of investigation and prepossession expenses. You also agree to pay the Creditor a check collection charge, as authorized by law, plus the amount charged by the financial institution for each check, draft or other form of payment which is returned or dishonored for any reason.

**14. Credit Information.** You hereby authorize the Creditor to investigate your creditworthiness and credit capacity in connection with the establishment, maintenance and collection of your account and to furnish information concerning your account, including insurance information, to credit reporting agencies and others who may lawfully receive such information.

**15. Interest after Maturity.** If there is a balance due when this contract matures, you agree to pay interest at the Annual Percentage Rate applicable to this contract, or if that rate is not authorized, the highest lawful rate.

3103AR (05/01/14)

# MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT
# SIMPLE INTEREST CHARGE – ARKANSAS



**16. Delay in Enforcing Rights and Changes in this Contract.** The Creditor can delay or refrain from enforcing any of its rights under this contract without losing them. For example, the Creditor can extend the time for making some payments without extending others. Any change in the terms of this contract must be in writing and signed by the Creditor. No oral changes are binding. If any part of this contract is not valid, all other parts will remain enforceable.

**17. Warranties Seller Disclaims.** You understand that the Seller is not offering any express warranties unless: (i) the seller extends a written warranty; or (ii) the window form for a used or demonstration vehicle indicates that the Seller is giving express warranties.

In addition, there are no implied warranties of merchantability or fitness for a particular purpose or any other implied warranties by the Seller covering the vehicle unless: (i) the Seller extends a written warranty; (ii) within 90 days from the date of this contract, you enter into a service contract with the Seller which applies to the motor vehicle being purchased; or (iii) the window form for a used or demonstration vehicle states that the Seller is giving implied warranties. To the extent permitted by applicable law, the Seller shall have no responsibility to you or to any other person with respect to any interruption of service, loss of business or anticipated profit or consequential damages.

An implied warranty of merchantability generally means that the vehicle is fit for the ordinary purpose for which such vehicles are generally used. A warranty of fitness for a particular purpose is a warranty that may arise when the Seller has reason to know the particular purpose for which you require the vehicle and you rely on the Seller's skill or judgment to furnish a suitable vehicle.

This provision does not affect any warranties covering the vehicle which may be provided by the vehicle manufacturer.

**18. Governing Law.** This contract will be governed by the laws of the State of Arkansas.

**19. Used and Demonstration Car Buyer's Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in this contract of sale. The preceding NOTICE applies only to a used or demonstration vehicle sale.**

**Guia Para Compradores de Vehículos Usados o Demostraciones. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto todas las disposiciones en contrario contenida en el contrato de venta. El AVISO anterior se aplica solamente a la venta de vehículo usado o demostración.**

**20. Electronic Contracting and Signature Acknowledgement.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, you will not assert against any subsequent holder or assignee of this contract any claims or defenses you (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.**

---

3103AR (08/01/14)

# MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT
# SIMPLE INTEREST CHARGE – ARKANSAS



**Receipt of Goods and Promise to Pay.** You agree that you have received the vehicle and/or services described above, and have accepted delivery of the vehicle in good condition. You promise to pay to the Creditor the Total Sale Price shown above by making the Total Downpayment and paying the Creditor the Total of Payments in accordance with the Payment Schedule shown on page one and all other amounts due under this contract.

**IMPORTANT: THE TERMS AND CONDITIONS ON ALL SIX PAGES OF THIS DOCUMENT ARE PART OF THIS CONTRACT. READ THESE TERMS AND CONDITIONS BEFORE SIGNING BELOW.**

## You signed this contract and received a completely filled in copy.

| | | | |
|---|---|---|---|
| Buyer Signature | ██████████████ E | Date | N/A |
| Name: | LUCY OKOLI | | |
| Co-Buyer Signature | N/A E | Date | N/A |
| Name: | N/A | | |
| Seller Signature | ██████████████ E | Date | N/A |
| Name: | PRESTIGE TOYOTA, LLC. | | |

**SELLER'S ASSIGNMENT**

Seller sells and assigns to Toyota Motor Credit Corporation ("TMCC") all of its rights, title and interest in this Contract in accordance with the terms of the Retail Sales Financing Agreement between Seller and TMCC.

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2015-Sep-01 12:13:00
60CV-15-4106
C06D12 : 2 Pages

# EXHIBIT No. 3

## Agreement for Delivery Prior to Sale

*Lucy M. Okoli v. Asbury Automotive Arkansas, L.L.C., et al.*
Circuit Court of Pulaski County, Arkansas

Plaintiff's Complaint

Agency #063:00

M

## RULES OF THE
## ARKANSAS MOTOR VEHICLE COMMISSION

### RULE 9
### DELIVERY PRIOR TO SALE/SPOT DELIVERY

1. Disclosures in the following language, in order and sequence, must be used in all agreements for delivery prior to sale of any motor vehicle unless excluded by these rules.

### AGREEMENT FOR DELIVERY PRIOR TO SALE

These disclosures are required by A.C.A. §23-112-316, and will be incorporated into your contract for sale to purchase a motor vehicle.

A.   **IMPORTANT NOTICE:** The papers you are signing as part of this motor vehicle sale are legal documents. You should read them carefully and if there is anything you do not understand, you should seek legal assistance. This agreement is not a contract for sale.

_Buyers Initials_

B.   **WARNING:** Only the terms and conditions written into these documents are part of the contract for sale. Be sure that any oral representations are also written into these documents, otherwise they cannot be enforced.

C.   This vehicle will be delivered to you prior to the approval of financing by a financial institution and prior to the execution of the contract for sale. I further understand the final contract for sale will include the following terms: the financed amount of $12332.40 _____ at a finance rate not to exceed ___4.50 % for ___75___ months or a cash amount of $2332.40.

   • If financing cannot be acquired at the agreed upon rate listed above, you have the right to cancel the purchase.
   • If the terms are changed by the dealer you have the right to cancel the purchase.
   • If the purchase is canceled for the above stated reasons, your vehicle trade in and/or your deposit must be returned to you.
   • No charge or penalty can be assessed to you for canceling the purchase.
   • You must return the vehicle to the dealer within 48 hours after you cancel the purchase, or it may be recovered by the dealer without judicial process.
   • You are responsible for any damages that may occur while the vehicle is in your possession.
   • Proof of insurance is required.

D.   Unless the consumer is approved for financing and both parties have executed a contract for sale, then the dealer shall not:

   • Deposit or cash any down payment.
   • Sell any motor vehicle trade in.

E.   Any fraud or misrepresentation in a motor vehicle sale is punishable under Arkansas Motor Vehicle Commission Law. You may contact the Arkansas Motor Vehicle Commission at:

Arkansas Motor Vehicle Commission
101 East Capitol, Suite 212
Little Rock, AR 72201
Phone: (501) 682-1428 Fax: (501) 682-5573
Website: www.armvc.com or E-mail amvo@arkansas.gov

I hereby certify that I received a copy of this disclosure.

_Buyer's Signature_

I hereby certify that I have given the buyer a copy of this disclosure.

_Dealer or Agent Signature_

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2015-Sep-01 12:13:00
60CV-15-4106
C06D12 : 2 Pages

# EXHIBIT No. 4

July 22, 2015 Letter to Lucy Okoli from GS Administrators, Inc.

*Lucy M. Okoli v. Asbury Automotive Arkansas, L.L.C., et al.*
Circuit Court of Pulaski County, Arkansas

Plaintiff's Complaint



**CERTIFIED**
Used Vehicles

P.O. BOX 441828
HOUSTON TX
77244-1828

**The Best New Cars Make
The Best Used Cars**

| | |
|---|---|
| **Agreement #:** | CUVA0312339 |
| **VIN:** | 4T1BF3EK0BU718397 |
| **Year/Model:** | 11 CAMRY/SE/LE/XLE |
| **Effective Date:** | 03/09/11 |
| **Expiration Date:** | 03/09/18 |
| **Expiration Mileage:** | 100,000 Miles |
| **Selling Dealer:** | NORTH POINT TOYOTA |
| **Dealer Phone Number:** | 501-753-0400 |

0000415 01 MB0.439 **AUTO  T2 0 0723 72212-404330

||ll|l|l||ll|||l|l||l|l||ll||ll|l||l|l|ll|ll|

July 22, 2015

**LUCY OKOLI**
1912 GREEN MTN DR APT 180
LITTLE ROCK, AR  72212-4043

Dear Lucy Okoli,

Thank you for purchasing a Toyota Certified Used Vehicle. Toyota's timeless commitment to quality, innovation and durability is the foundation upon which the Toyota Certified Used Vehicle (TCUV) program was launched. We know you have many options in today's automotive marketplace and we appreciate the fact that a Toyota Certified Used Vehicle was your vehicle of choice.

Every Toyota Certified Used Vehicle undergoes a rigorous **160-point Quality Assurance Inspection** and the following benefits are included at no extra cost:

- **Comprehensive Warranty**
  - 12 Month/ 12,000 Miles (from the vehicle purchase date), whichever occurs first
  - $50 deductible per visit applies
- **Limited Powertrain Warranty**
  - 7 years or 100,000 miles (from the vehicle's Manufacturer's Warranty start date, when sold as new), whichever occurs first
  - $50 deductible per visit applies
- **Travel Protection and Substitute Transportation for the duration of the Limited Powertrain Warranty**
- **Roadside Assistance**
  - 1 year from vehicle purchase date
  - Call toll-free for service, 24 hours a day 1-800-446-6614
  - Includes towing to the nearest Toyota dealership for mechanical breakdowns and collision recovery, flat tire changes, lockouts, jump-starts and fluid delivery
  - Does not include cost of any parts or fluids

Please see your Toyota Certified Used Vehicle Warranty Supplement for a complete statement of your warranty coverage and applicable benefits. If you have questions or need additional information please contact your selling dealer. If you need further assistance, you may contact our Customer Assistance Center toll-free at 1-800-833-8443.

For your convenience, we have provided you with two membership cards for your Warranty and Roadside Assistance Programs. Please keep this letter portion in your glove box and keep the cards in your wallet or purse.

We thank you once again for purchasing a Toyota Certified Used Vehicle.

Sincerely,

GS Administrators, Inc.

---

 **WARRANTY & ROADSIDE
ASSISTANCE CARD**

**Customer Name:** LUCY OKOLI
**Agreement/Member #:** CUVA0312339
**Model:** 11 TOYOTA CAMRY/SE/LE/XLE
**VIN:** 4T1BF3EK0BU718397
**Transferable:** Yes
**Deductible:** $50 per repair visit
**Roadside Assistance:** See backside of this card
**Expires On: 03/09/18 OR 100,000 Miles**
(whichever occurs first)

 **WARRANTY & ROADSIDE
ASSISTANCE CARD**

**Customer Name:** LUCY OKOLI
**Agreement/Member #:** CUVA0312339
**Model:** 11 TOYOTA CAMRY/SE/LE/XLE
**VIN:** 4T1BF3EK0BU718397
**Transferable:** Yes
**Deductible:** $50 per repair visit
**Roadside Assistance:** See backside of this card
**Expires On: 03/09/18 OR 100,000 Miles**
(whichever occurs first)

TCV11LT (03/2011)

03 0000415 0000835

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2015-Sep-01 12:13:00
60CV-15-4106
C06D12 : 2 Pages

# EXHIBIT No. 5

July 28, 2015 Letter to Lucy Okoli from Toyota Certified Used Vehicle Department, Toyota Motor Sales, USA, Inc.

*Lucy M. Okoli v. Asbury Automotive Arkansas, L.L.C., et al.*
Circuit Court of Pulaski County, Arkansas

Plaintiff's Complaint



# Toyota Certified Used Vehicle Survey

July 28, 2015

#2210 2329 896#
Lucy Okoli
1912 GREEN MOUNTAIN DR APT 180
LITTLE ROCK, AR 72212-4043



Dear Lucy Okoli,

Toyota Motor Sales, USA, Inc. and North Point Toyota would like to thank you for choosing a certified Camry.

We would appreciate getting feedback on your recent purchase experience. Your insight will help us continuously improve your future experiences with us.

Please use the following information to complete your survey on-line. The survey is available in several languages.

1. Visit: **www.mytoyotacertifiedvoice.com**
2. Enter your User ID: **bcr-5m4**



To complete the mobile version
of the survey, scan this code
with your smart phone.

We know your time is valuable, and we sincerely thank you for sharing your opinion with us.

Sincerely,

Toyota Certified Used Vehicle Department
Toyota Motor Sales, USA, Inc.

If you have any additional comments or would like to discuss your experience, please contact the Customer Relations Manager at North Point Toyota at (501) 753-0400 or Toyota's Customer Experience Center at 800-331-4331. You may update your customer information and become a member of Toyota Owners Online by registering at ToyotaOwnersOnline.com.

View our Privacy Policy: www.toyota.com/help/privacy.html



42210232989

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**12th DIVISION**

LUCY M. OKOLI                                                          **PLAINTIFF**

v.                                        **Case No. 60CV-15-4106**

ASBURY AUTOMOTIVE
ARKANSAS L.L.C.,
PRESTIGE TOY, L.L.C.,
TOYOTA MOTOR CREDIT
CORPATION and John Does
1-100                                                                  **DEFENDANTS**

---

### PLAINTIFF's FIRST SET OF INTERROGATORIES

---

| To: | ASBURY AUTOMOTIVE ARKANSAS L.L.C. and PRESTIGE TOY, L.L.C.<br><br>c/o Corporation Service Company,<br>300 Spring Building, Suite 900,<br>300 S. Spring Street, Little Rock, AR 72201 | From: | LUCY M. OKOLI<br>c/o Will Crowder<br>CROWDER MCGAHA, LLP<br>5507 Ranch Drive, Suite 202<br>Little Rock, AR 72223 |
|-----|---|---|---|

Under Rules 26 and 33 of the Arkansas Rules of Civil Procedure, Plaintiff Lucy M. Okoli ("plaintiff") through her undersigned counsel, request that Asbury Automotive Arkansas, L.L.C. ("Asbury Automotive") and Prestige Toy, L.L.C. provide sworn answers to the following Interrogatories no later than forty-five (45) after the service of this First Set of Requests for Production of Documents (the "Requests"), or any other date ordered by the Court:

### DEFINITIONS AND INSTRUCTIONS

1.     The term "You" and "Your" means the party or parties to whom this request is addressed including, if appropriate, its, his or her divisions, departments, parents, subsidiaries,

affiliates, predecessors, present or former officers, directors, owners, agents, attorneys, and all other persons acting or purporting to act on its behalf, and each partnership in which it, he or she is a partner. The term "person" means any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, group of natural persons or other business enterprise, governmental body, group of natural persons or the entity. The term "Employee" shall mean all Employees past and present affiliated with You.

    2.    The term "Document" means every writing or other source of recorded information of whatever nature and by whatever means recorded, including: written letters, memoranda, messages, telegrams, teletype, fax, charts, notes, records, intra- and inter-office communications, correspondence, electronic mail, reports of any kind (including police reports), chronological data, minutes, diaries, handbooks, books, manuals, manuscripts, galley proofs, sound recordings, microfilm, computer printouts or Documents obtainable from electronic Data storage equipment, records of telephone conversations, records of sales orders, shipping papers, sketches, blueprints, tests, studies, summaries, pamphlets, printed matter, ledgers, invoices, worksheets, receipts, returns, prospectuses, financial statements, schedules, affidavits, contracts, cancelled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases (and any and all drafts, alterations and modifications, changes and amendments of the foregoing), graphic or aural records or representations of any kind (including, without limitation, photographs, microfiche, videotape, records and motion pictures), electronic, mechanical or electrical records or representations of any kind, photocopies and any and all other papers and writings, including drafts and original copies (including, without limitation, tapes, cassettes, disks and records).  Any Document bearing on any sheet, or side, any mark, such as a receipt

stamp, initials, routing information or comment, which is not part of the original text of the Document, is considered a separate Document for these Interrogatories.

3.      "Identify" referring to an individual person means to state:

   a.     full name,

   b.     present or last know business address and telephone number,

   c.     present or last known position of employment or business affiliation, and the present or last known address and telephone number of that employer or business, and

   d.     for persons whose addresses are inaccurate identify the most reliable contact person and state the most reliable contact address and telephone number to Defendants' knowledge or information.

4.      In answering the Interrogatories, You may, in lieu of identifying any Document or written communication, attach a true copy of such Document or communication as an exhibit to your answers to these Interrogatories, including an explicit reference to the Interrogatory in which each such attached Document or written communication relates.

5.      A request for knowledge, information or Documents includes not only knowledge, information or Documents in the possession or control of Defendants, but also knowledge, information or Documents in the possession or control of Defendants' representatives, Employees, agents, independent contractors, insurers or attorneys, to which, as a practical matter, Defendants have a means of access.

6.      "Including" shall mean "including but not limited to," or "including, without limitation," any examples that follow those phrases that are set forth to clarify the request, definition or instruction.

7.      "And" shall mean and/or.

8.      "Or" shall mean and/or.

9.    "Refer," "referring," relate," "relating," "concern" and "concerning" mean all Documents, as defined above, which explicitly or implicitly, in whole or in part, compare, were received with, or were generated because of the matter of the request, including, but not limited to, all Documents, as defined above, which reflect, record, memorialize, discuss, describe, consider, concern, constitute, embody, evaluate, analyze, review, report on, comment on, imping upon or impact the matter of the request.

10.    IT IS REQUESTED THAT ALL DOCUMENTS AND/OR OTHER DATA COMPILATIONS WHICH MIGHT IMPACT ON THE SUBJECT MATTER OF THIS LITIGATION BE PRESERVED AND THAT ANY ONGOING PROCESS OF DOCUMENT DESTRUCTION INVOLVING SUCH DOCUMENTS CEASE.

11.    If You contend any Document of which production is requested is privileged on some ground, whether attorney-client, work product or otherwise, state regarding each such Document:

> a.    the date;
>
> b.    the author;
>
> c.    a description of the Document;
>
> d.    the basis or bases of the privilege claimed; and
>
> e.    the Interrogatory or Interrogatories and/or Request or Requests for Production to which the Document is responsive.

### III.    INTERROGATORIES

**<u>INTERROGATORY NO. 1:</u>**

Identify each person involved in obtaining financing approval from another lender for Plaintiff.

**INTERROGATORY NO. 2**:

Provide a complete statement of all factors that were an obstacle to Plaintiff's obtaining credit approval.

**INTERROGATORY NO. 3**:

Provide a complete statement of why You though financing would be obtained for Plaintiff.

**INTERROGATORY NO. 4**:

Provide a description of all procedures You use in delivering the vehicle before obtaining outside financing, including paperwork to be signed by the consumer, oral disclosures given to the consumer, and when and under what circumstances temporary tags and registrations are issued.

**INTERROGATORY NO. 5**:

Identify each customer who in the last year was spot delivered a vehicle and for whom financing did not go through or went through at a higher rate.

**INTERROGATORY NO. 6**:

Identify any misrepresentations or errors You believe the consumer made in the purchase or credit application, and all facts upon which You relied in making this judgment.

**INTERROGATORY NO. 7**:

Identify who signed the "Dealer or Agent Signature" line of the Agreement for Delivery Prior to Sale, and who witnessed plaintiff sign this document.

DATED: September 1, 2015

Respectfully Submitted,

William T. Crowder, ABN 2003138
Corey D. McGaha, ABN 2003047
CROWDER MCGAHA, LLP
5507 Ranch Drive, Suite 202
Little Rock, AR 72223
Phone: 501.205.4026
Fax: 501.367.8208

Cecille Doan, ABN 2009246
CENTER FOR ARKANSAS LEGAL
SERVICES
1300 West 6th Street
Little Rock, AR 72201
Phone: 501.376.3423
Fax: 501.376.3664

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2015, I served a copy of the foregoing via Certified

Mail Return Receipt Requested to:

ASBURY AUTOMOTIVE ARKANSAS L.L.C.

c/o Corporation Service Company,
300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, AR 72201

PRESTIGE TOY, L.L.C.

c/o Corporation Service Company,
300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, AR 72201

William T. Crowder

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**12th DIVISION**

LUCY M. OKOLI                                                      **PLAINTIFF**

v.                                        **Case No. 60CV-15-4106**

ASBURY AUTOMOTIVE
ARKANSAS L.L.C.,
PRESTIGE TOY, L.L.C.,
TOYOTA MOTOR CREDIT
CORPATION and John Does
1-100                                                            **DEFENDANTS**

---

**PLAINTIFF's FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

---

| To: | ASBURY AUTOMOTIVE ARKANSAS L.L.C. and PRESTIGE TOY, L.L.C.<br><br>c/o Corporation Service Company,<br>300 Spring Building, Suite 900,<br>300 S. Spring Street, Little Rock, AR 72201 | From: | LUCY M. OKOLI<br>c/o Will Crowder<br>CROWDER MCGAHA, LLP<br>5507 Ranch Drive, Suite 202<br>Little Rock, AR 72223 |
|---|---|---|---|

Under Rules 26 and 34 of the Arkansas Rules of Civil Procedure, Plaintiff Lucy M. Okoli ("plaintiff") by and through her undersigned counsel, request that Asbury Automotive Arkansas, L.L.C. ("Asbury Automotive") and Prestige Toy, L.L.C. produce the following Documents no later than forty-five (45) after the service of of this First Set of Requests for Production of Documents (the "Requests"), or any other date ordered by the Court:

# I.     INSTRUCTIONS

A.     All Documents or communications produced in response to these Requests must be produced as they are kept in the ordinary course of business or organized and labeled to correspond to the Requests that they are responsive.

B.     In the event that any claim of privilege from discovery is asserted with respect to any Document, identify the Document by specifying its author(s), addressee(s), recipient(s), date, persons to whom copies were furnished, subject matter, type (*e.g.,* letter, memo, etc.), and specify the precise grounds upon which the claim of privilege is based. If only a portion of any Document is subject to an assertion of privilege, produce each and every portion of such Document not containing the allegedly privileged matter, and comply with the instructions in the preceding paragraph concerning the matter with respect to which the claim of privilege is asserted. Similarly, in the event an objection is made to any Request or part thereof, produce all Documents in the category requested to the full extent that such production would not be subject to the objections.

C.     In responding to these Requests, You are required by law to produce all Documents reasonably available to You or subject to Your custody or control, including without limitation Documents in the possession of Your attorneys (only to the extent they have possession or control of responsive non-privileged Documents), accountants, advisors, or other persons directly or indirectly employed by or associated with You or Your counsel, and anyone else otherwise subject to Your control.

D.     In responding to these Requests, You must make a diligent search of Your own records and of all other papers and materials in your possession or available to You or Your representatives.

E.     In the event that a Document called for by these Requests has been destroyed, the response hereto shall Identify (to the extent it is known): (a) the preparer of the Document; (b) its addressor (if different); (c) its addressee; (d) each recipient thereof; (e) the date it was created or prepared; (f) the date it was transmitted (if different); (g) a description of its contents and subject matter; (h) the date of its destruction; (i) the manner of its destruction; (j) the name, title and address of the person authorizing its destruction; (k) the reason(s) for its destruction; (l) the name, title and address of the person who destroyed the Document; and (m) a description of the efforts You have taken to located a copy of the Document.

## II.     DEFINITIONS

A.     "And" and "or" are to be considered conjunctively and disjunctively. The singular form or a noun or pronoun includes the plural form and vice versa. "Or" is understood to include and encompass "and."

B.     "Any" is understood to include and encompass "all." The word "all also includes "each" and vice versa.

C.     "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

D.     "Concerning" means relating to, referring to, describing, evidencing, or constituting.

E.     "Document" or "Documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Rule 34(a) of the Arkansas Rules of Civil Procedure and specifically includes 'writings, drawings, graphs, charts, photographs, phono-records and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form." The term "Document" or "Documents" also includes "Electronically stored information" as defined by Rule 26.1(a)(3) of the Arkansas Rules of Civil Procedure. The term "Document" or "Document" includes any Document received by or sent by You using any e-mail account. A draft or non-identical copy containing marginal notations or a subsequent version is a separate Document within the meaning of this term.

F.     "Asbury Automotive" means Asbury Automotive Arkansas, L.L.C. and also means collectively or in any combination any of their corporations, businesses, subsidiaries, divisions, subdivisions, affiliated entitles, predecessors, successors, parents, and their respective officers, directors, employees, partners, representatives, agents, attorneys (to the extent they have possession or control of responsive, non-privileged information), accountants or other persons occupying similar positions or performing similar functions.

G.     "Prestige Toyota" means Prestige Toy, L.L.C., and also means collectively or in any combination any of their corporations, businesses, subsidiaries, divisions, subdivisions, affiliated entitles, predecessors, successors, parents, and their respective officers, directors, employees, partners, representatives, agents, attorneys (to the extent they have possession or control of responsive, non-privileged information), accountants or other persons occupying similar positions or performing similar functions.

H.    "You" or "Your" means the party or parties to whom this request is addressed, including, if appropriate, its, his or her divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, attorneys (only to the extent they have possession or control of responsive, non-privileged Documents), and all other persons acting or purporting to act on its behalf, as well as each partnership in which it, he or she is a partner.

### III.    DOCUMENTS TO BE PRODUCED

**DOCUMENT REQUEST NO. 1:**

All Documents signed by plaintiff.

**DOCUMENT REQUEST NO. 2:**

Each temporary tag and temporary registration, and Documents sent to the department of motor vehicles Concerning to such temporary tags or registration.

**DOCUMENT REQUEST NO. 3:**

Each application for permanent registration or tags and every Document Concerning transfer of tags.

**DOCUMENT REQUEST NO. 4:**

All of the plaintiff's statements or other application for financing, every credit report on the consumer and any other Document pertaining to the consumer's expenses, income, liabilities, creditworthiness, integrity, employment, relatives, references, residence, credit score, or any other Document that the dealer relied on in assuming the consumer would obtain financing.

**DOCUMENT REQUEST NO. 5:**

Any Documents provided to a lender in conjunction with a financing application.

**DOCUMENT REQUEST NO. 6:**

The deal file, including all its contents, for five transactions the dealer contends supports Your belief that a lender would accept the consumer's installment contract for financing.

**DOCUMENT REQUEST NO. 7:**

Every Document You received from any lender in connection with the consumer's application, including each call back sheet, credit decision, facsimile, or other document pertaining to the application

**DOCUMENT REQUEST NO. 8:**

The file jacket.

**DOCUMENT REQUEST NO. 9:**

Any video or audio recording of any portion of the sale and financing transaction.

**DOCUMENT REQUEST NO. 10:**

 All notes and other Documents which refer to the financing or attempted financing, all payments received from the consumer, every promissory note signed by the consumer, each document by which the dealer asserts a security interest, including any Document referring to contingencies on the sale of the vehicle or on the financing.

**DOCUMENT REQUEST NO. 11:**

Each title to the vehicle, Documents received from a government agency as to when dealers may issue temporary tags or registration, and the underwriting guidelines or program information that the dealer possesses concerning any lender with which it does business.

**DOCUMENT REQUEST NO. 12**:

All Documents Concerning to the plaintiff's trade-in, the stock and inventory cards or similar recoveries for the plaintiff's trade-in and the vehicle the plaintiff purchased, and the daily cash receipt journal or ledger that reflects any of the plaintiff's payments.

**DOCUMENT REQUEST NO. 13**:

All Documents Concerning bonuses, spiffs, or other incentives concerning the purchase of the vehicle, all documents concerning commissions to each dealer employee in connection to the purchased vehicle or trade-in, including sales personnel, the finance and insurance manager, sales manager, and including all hard copies or any computer entry.

**DOCUMENT REQUEST NO. 14**:

All wash out sheets, internal worksheets, reconciliations, or other Documents that refer to the front end or back end of the deal, including reserve prices set or profits made, all internal invoices, controls, or accounting documents referring to the vehicle's price, all Documents relating to Your pack or gross, net, or other profits earned by You or Your personnel in connection to the deal.

**DOCUMENT REQUEST NO. 15**:

All internal memos or other Documents providing directions to Your title clerks, registration clerks, tag clerks, accounting personnel, sales or other staff in connection with the consumer's deal, its financing, temporary tags or registration.

**DOCUMENT REQUEST NO. 16**:

All documents used to train Your personnel in connection with issuing temporary tags, temporary registrations, or spot deliveries.

DATED: September 1, 2015

Respectfully Submitted,

William T. Crowder, ABN 2003138
Corey D. McGaha, ABN 2003047
CROWDER MCGAHA, LLP
5507 Ranch Drive, Suite 202
Little Rock, AR 72223
Phone: 501.205.4026
Fax: 501.367.8208

Cecille Doan, ABN 2009246
CENTER FOR ARKANSAS LEGAL
SERVICES
1300 West 6th Street
Little Rock, AR 72201
Phone: 501.376.3423
Fax: 501.376.3664

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2015, I served a copy of the foregoing via Certified

Mail Return Receipt Requested to:

ASBURY AUTOMOTIVE ARKANSAS L.L.C.

c/o Corporation Service Company,
300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, AR 72201

PRESTIGE TOY, L.L.C.

c/o Corporation Service Company,
300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, AR 72201

William T. Crowder

THE CIRCUIT COURT OF __Pulaski_____ COUNTY, ARKANSAS

__Civil____ DIVISION [Civil, Probate, etc.]

Lucy M. Okoli
_____

Plaintiff

v.

Asbury Automotive Arkansas L.L.C., et al.

No. _____

_____

Defendant

SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

Asbury Automotive Arkansas L.L.C.

_____   [Defendant's name and address.]

Corporation Service Company

300 Spring Building, Suite 900, 300 S  Spring Street, Little Rock, AR 72201

A lawsuit has been filed against you.  The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are: Will Crowder, CROWDER MCGAHA, LLP, 5507 Ranch Drive, Suite 202, Little Rock, AR 72223

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

CLERK OF COURT

Address of Clerk's Office

  401 W Markham St. #100

_____

  Little Rock, AR 72201

_____

_____

[Signature of Clerk or Deputy Clerk]

Date:_____

[SEAL]

No. 1_____   **This summons is for** Asbury Automotive Arkansas L.L.C._____ *(name of Defendant).*

## PROOF OF SERVICE

☐ I personally delivered the summons and complaint to the individual at _____ _____[place] on _____ [date]; or

☐ I left the summons and complaint in the proximity of the individual by _____ _____ after he/she refused to receive it when I offered it to him/her; or

☐ I left the summons and complaint at the individual's dwelling house or usual place of abode at _____[address] with _____[name], a person at least 14 years of age who resides there, on _____[date]; or

☐ I delivered the summons and complaint to _____[name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____[name of defendant] on _____[date]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]: _____

☐ I was unable to execute service because: _____

_____

My fee is $ ____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

                              By: _____
                              [Signature of server]


                              _____
                              [Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____          By: _____
                              [Signature of server]


                              _____
                              [Printed name]

Address: _____

         _____

Phone: _____

Subscribed and sworn to before me this date: _____


                              _____
                              Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____



Arkansas Judiciary

**Case Title:**      LUCY M OKOLI V ASBURY AUTOMOTIVE ARK ET
AL

**Case Number:**   60CV-15-4106

**Type:**            SUMMONS - FILER PREPARED

So Ordered

Natarsha Pickens

THE CIRCUIT COURT OF __Pulaski__ COUNTY, ARKANSAS

__Civil__ DIVISION [Civil, Probate, etc.]

Lucy M. Okoli
_____

Plaintiff

v.                                           No. _____

Asbury Automotive Arkansas L.L.C., et al.
_____

Defendant

SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

Prestige Toy, L.L.C.
_____   [Defendant's name and address.]

Corporation Service Company

300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, AR 72201

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are: Will Crowder, CROWDER MCGAHA, LLP, 5507 Ranch Drive, Suite 202, Little Rock, AR 72223

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

CLERK OF COURT

Address of Clerk's Office

401 W Markham St. #100
_____

Little Rock, AR 72201
_____

_____
[Signature of Clerk or Deputy Clerk]

Date:_____

[SEAL]

No. 2_____ **This summons is for** Prestige Toy, L.L.C._____ *(name of Defendant).*

## PROOF OF SERVICE

☐ I personally delivered the summons and complaint to the individual at _____
_____[place] on _____ [date]; or

☐ I left the summons and complaint in the proximity of the individual by _____
_____ after he/she refused to receive it when I offered it to him/her; or

☐ I left the summons and complaint at the individual's dwelling house or usual place of
abode at _____[address] with _____[name], a
person at least 14 years of age who resides there, on _____[date]; or

☐ I delivered the summons and complaint to _____[name of individual],
an agent authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served
the summons and complaint on the defendant by certified mail, return receipt requested,
restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a
copy of the summons and complaint by first-class mail to the defendant together with two
copies of a notice and acknowledgment and received the attached notice and
acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]: _____

☐ I was unable to execute service because: _____

_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____          By: _____
[Signature of server]

_____
[Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____

_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____



Arkansas Judiciary

**Case Title:**   LUCY M OKOLI V ASBURY AUTOMOTIVE ARK ET AL

**Case Number:**   60CV-15-4106

**Type:**   SUMMONS - FILER PREPARED

So Ordered

Natarsha Pickens

Electronically signed by NRPICKENS on 2015-09-01 12:47:18   page 4 of 4

THE CIRCUIT COURT OF __Pulaski___ COUNTY, ARKANSAS

__Civil___ DIVISION [Civil, Probate, etc.]

## Lucy M. Okoli

Plaintiff

v.

No. _____

Asbury Automotive Arkansas L.L.C., et al.

Defendant

### SUMMONS

### THE STATE OF ARKANSAS TO DEFENDANT:

Toyota Motor Credit Corporation

[Defendant's name and address.]

The Corporation Company

124 West Capitol Ave, Suite 1900, Little Rock, AR 72201

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are: Will Crowder, CROWDER MCGAHA, LLP, 5507 Ranch Drive, Suite 202, Little Rock, AR 72223

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

CLERK OF COURT

Address of Clerk's Office

401 W Markham St. #100

Little Rock, AR 72201

[Signature of Clerk or Deputy Clerk]

Date:_____

[SEAL]

No. 3_____   **This summons is for** Toyota Motor Credit Corporation _____ *(name of Defendant)*.

## PROOF OF SERVICE

☐ I personally delivered the summons and complaint to the individual at _____
_____[place] on _____ [date]; or

☐ I left the summons and complaint in the proximity of the individual by _____
_____ after he/she refused to receive it when I offered it to him/her; or

☐ I left the summons and complaint at the individual's dwelling house or usual place of
abode at _____[address] with _____[name], a
person at least 14 years of age who resides there, on _____[date]; or

☐ I delivered the summons and complaint to _____[name of individual],
an agent authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served
the summons and complaint on the defendant by certified mail, return receipt requested,
restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a
copy of the summons and complaint by first-class mail to the defendant together with two
copies of a notice and acknowledgment and received the attached notice and
acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]: _____

☐ I was unable to execute service because: _____

_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

                               By: _____
                               [Signature of server]


                               _____
                               [Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____           By: _____
                              [Signature of server]


                              _____
                              [Printed name]

Address: _____


_____

Phone: _____

Subscribed and sworn to before me this date: _____


                               _____
                               Notary Public


My commission expires: _____


Additional information regarding service or attempted service:


_____


_____



Arkansas Judiciary

**Case Title:**   LUCY M OKOLI V ASBURY AUTOMOTIVE ARK ET
AL

**Case Number:**   60CV-15-4106

**Type:**   SUMMONS - FILER PREPARED

So Ordered

_Natarsha Pickens_

Natarsha Pickens

Electronically signed by NRPICKENS on 2015-09-01 12:51:08    page 4 of 4

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2015-Sep-08 10:00:37
60CV-15-4106
C06D12 : 3 Pages

**No.** 1_____ **This summons is for** Asbury Automotive Arkansas L.L.C._____ *(name of Defendant).*

### PROOF OF SERVICE

☐ I personally delivered the summons and complaint to the individual at _____
_____[place] on _____ [date]; or

☐ I left the summons and complaint in the proximity of the individual by _____
_____ after he/she refused to receive it when I offered it to him/her; or

☐ I left the summons and complaint at the individual's dwelling house or usual place of abode at _____[address] with _____[name], a person at least 14 years of age who resides there, on _____[date]; or

☐ I delivered the summons and complaint to _____[name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____[name of defendant] on _____[date]; or

☒ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]: _____

☐ I was unable to execute service because: _____

_____

My fee is $ _0_.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

                               By: _____
                               [Signature of server]

                               _____
                               [Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _September 8, 2015_          By: _____
                                   [Signature of server]

                                   William T. Crowder
                                   [Printed name]

Address: _5507 Ranch Drive, Suite 202_

         _Little Rock, AR 72223_

Phone: _501.205.4026_

Subscribed and sworn to before me this date: _9/8/15_

                                   _____
                                   Notary Public

My commission expires: _7/5/16_

Additional information regarding service or attempted service:

_____

_____

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _Adm_    ☐ Agent ☐ Addressee<br>B. Received by (Printed Name)   C. Date of Delivery<br>_Adam Irvis_   9/3 |
| 1. Article Addressed to:<br><br>ASBURY AUTOMOTIVE ARKANSAS, L.L.C.<br>c/o CORPORATION SERVICE COMPANY<br>300 SPRING BUILDING, STE 900<br>300 S. SPRING STREET<br>LITTLE ROCK, AR 72201 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br><br>3. Service Type<br>☐ Certified Mail® ☐ Priority Mail Express™<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ Collect on Delivery<br>4. Restricted Delivery? (Extra Fee) ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7014 1200 0002 3015 5300 |

PS Form 3811, July 2013      Domestic Return Receipt

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2015-Sep-08  10:02:59
60CV-15-4106
C06D12 : 3 Pages

**No. 2_____   This summons is for** Prestige Toy, L.L.C. _____ *(name of Defendant).*

## PROOF OF SERVICE

☐ I personally delivered the summons and complaint to the individual at _____
_____[place] on _____ [date]; or

☐ I left the summons and complaint in the proximity of the individual by _____
_____ after he/she refused to receive it when I offered it to him/her; or

☐ I left the summons and complaint at the individual's dwelling house or usual place of abode at _____[address] with _____[name], a person at least 14 years of age who resides there, on _____[date]; or

☐ I delivered the summons and complaint to _____[name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____[name of defendant] on _____[date]; or

☒ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]: _____

☐ I was unable to execute service because: _____

_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____     SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: September 8, 2015        By: _____
                               [Signature of server]

                               William T. Crowder
                               [Printed name]

Address:  5507 Ranch Drive, Suite 202

          Little Rock, AR 72223

Phone:  501.205.4026

Subscribed and sworn to before me this date: _9/8/15_

_____
Notary Public

My commission expires: _7/5/16_

Additional information regarding service or attempted service:

_____

_____

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

PRESTIGE TOY, L.L.C.
c/o CORPORATION SERVICE
      COMPANY
300 SPRING BUILDING, STE 900
LITTLE ROCK, AR 72201

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _____  ☐ Agent
                    ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Adam Davis                      9/3

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail®        ☐ Priority Mail Express™
   ☐ Registered             ☐ Return Receipt for Merchandise
   ☐ Insured Mail           ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number
   (Transfer from service label)      7014 1200 0002 3015 5324

PS Form 3811, July 2013            Domestic Return Receipt

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2015-Sep-08 10:03:45
60CV-15-4106
C06D12 : 3 Pages

No. 3_____ **This summons is for** Toyota Motor Credit Corporation _____ *(name of Defendant).*

## PROOF OF SERVICE

☐ I personally delivered the summons and complaint to the individual at _____ _____[place] on _____ [date]; or

☐ I left the summons and complaint in the proximity of the individual by _____ _____ after he/she refused to receive it when I offered it to him/her; or

☐ I left the summons and complaint at the individual's dwelling house or usual place of abode at _____[address] with _____[name], a person at least 14 years of age who resides there, on _____|date]; or

☐ I delivered the summons and complaint to _____[name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____[name of defendant] on _____[date]; or

☒ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]: _____

☐ I was unable to execute service because: _____

_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: September 8, 2015          By: _____
_____               [Signature of server]

William T. Crowder
[Printed name]

Address: 5507 Ranch Drive, Suite 202

Little Rock, AR 72223

Phone: 501.205.4026

Subscribed and sworn to before me this date: 9/8/15

_____
Notary Public

My commission expires: 7/5/16

Additional information regarding service or attempted service:

_____

_____

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X CT CORPORATION
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*
SEP 03 205

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

TOYOTA MOTOR/CREDIT
CORPORATION
c/o The Corporation Company
124 West Capitol Ave, Ste 1900
LITTLE ROCK, AR 72201

3. Service Type
☐ Certified Mail®   ☐ Priority Mail Express™
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ Collect on Delivery

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Article Number
*(Transfer from service label)*
7014 1200 0002 3015 5317

PS Form 3811, July 2013          Domestic Return Receipt